Salinger, Kenneth W., J.
Joseph Boyle was seriously injured by an automobile tire that exploded at a repair shop. The shop was insured by Zurich American Insurance Company under a business auto policy with a $50,000 limit on bodily injury coverage. After Boyle and his wife sued the repair shop for negligence, Zurich failed to defend, the repair shop failed to appear, and as a result a default judgment now worth $3.7 million was entered against the repair shop. In this action, Boyle and his wife claim that Zurich violated G.L.c. 93A and c. 176D by not investigating their claims and not settling them once the repair shop’s liability was established. They seek to recover the full default judgment in the underlying case plus multiple damages and attorneys fees.
Zurich has moved for summary judgment on the ground that it is entitled to the safe harbor protections of G.L.c. 93A, §9(3), because it responded to a postjudgment demand letter by offering to pay its $50,000 policy limit plus interest.
By statute, the reasonableness of Zurich’s settlement offer must be evaluated by comparing it to any injury suffered by the Boyles as a result of Zurich’s failure to offer its policy limits much earlier. The multiple damages that the Boyles could collect if they could prove that Zurich willfully violated c. 176D— which would be a multiple of the amount of the default judgment entered against the repair shop—are not relevant in evaluating the reasonableness of Zurich’s settlement offer.
But Zurich is not entitled to summary judgment because it has not shown that its policy limit offer was reasonable as a matter of law. If Zurich breached its duly to defend the repair shop, then Zurich may be liable to the Boyles for the full amount of the default judgment. Even if there were any doubt about whether Zurich breached its duty to defend, Zurich would be obligated under its insurance policy to pay postjudgment interest up to the time of its settlement offer without regard to the $50,000 policy limit so long as the Boyles can show that their tort claims were covered by the policy. Zurich cannot evade its obligation to pay postjudgment interest under its policy by ignoring and failing to defend a covered claim.
Whether Zurich breached its duly to defend and whether the Boyles’ claims were covered by the Zurich policy turn on disputed issues of material fact. Zurich argues that it can escape its defense and other coverage obligations on the ground that C&N allegedly failed *140 to notify Zurich of the Boyles’ tort suit and that Zurich was prejudiced as a result. The Boyles have presented admissible evidence that casts doubt on those factual assertions, however. This dispute of fact is material. If Zurich received prompt notice of the tort suit or was not prejudiced by the lack of it, then the Boyles may be able to show that Zurich was obligated to pay much more than its $50,000 policy limit and thus that its settlement offer was not reasonable.
1. Undisputed Material Facts
The following are undisputed facts or reasonable inferences drawn from those facts. In evaluating Zurich’s motion for summary judgment, the Court “must . . . draw all reasonable inferences” from the evidence presented “in favor of the nonmoving parly,” as a jury or judicial fact finder would be free to do at trial. Godfrey v. Globe Newspaper Co., Inc., 457 Mass. 113, 119 (2010). It has done so.
On March 8, 2006, Joseph Boyle was seriously injured and suffered a permanent loss of use of his left arm when a tire on a truck on a lift exploded. The truck was being worked on by an employee of C&N Corp. d/b/a Malden Spring & Brake Corp. Earlier that day a C&N employee had gone to the business that owned the truck, put C&N repair plates on the vehicle, and driven it back to the C&N repair shop. The employee asked Boyle to listen to the transmission while the truck was on the lift and the employee revved the engine, causing the rear wheels to rotate at the equivalent of 25-30 miles per hour. Boyle did so. The tire then exploded, fracturing and deeply lacerating Boyle’s arm.
C&N was insured by Zurich under a business auto policy at the time Boyle was injured. The policy included bodily injury coverage of up to $50,000 per person, which covered accidental bodily injuries resulting from maintenance of a covered motor vehicle. The truck on the lift was covered by the policy.
Zurich received notice of Boyle’s injuries and likely claim from C&N on March 20, 2006, twelve days after the tire exploded. In October and again in December 2006, counsel for Boyle informed Zurich that Boyle planned to file a personal injury claim and asked Zurich to disclose its policy limits. Zurich never responded to these letters. Zurich closed its file on this claim on February 29, 2008.
Zurich had ample time before it closed its file to investigate Boyle’s injury, determine whether its policy covered claims arising from it, and to make an offer of settlement within its coverage limits. But Zurich never did any of those things.
Boyle and his wife sued C&N and one of its employees on August 4, 2008. Boyle asserted claims for negligence and his wife sued for loss of consortium. C&N was served in hand in December 2008. The insurance policy states that Zurich had no duty to provide coverage under the policy unless C&N complied with various duties, including the duty to send Zurich copies of any summons or other legal paper that C&N received concerning any claim or lawsuit. Whether C&N notified Zurich that the Boyles had filed their lawsuit is a disputed issue of fact.
An order defaulting C&N was entered on January 8, 2009, after C&N failed to file any answer or other response to the complaint. The Boyles moved for an assessment of damages on February 9, 2009.
In September 2009, the Boyles’ counsel notified Zurich that an assessment of damages hearing was scheduled in the tort action against C&N. Counsel then sent a further notice pursuant to G.L.c. 233, §79G, that the Boyles planned to introduce records documenting bills totaling $106,343.09. Zurich took no steps to defend C&N, investigate the matter, or do anything else in response to these notices.
After a hearing, the court (MacLeod-Mancuso, J.) awarded $1.5 million plus interest to Boyle and $750,000 plus interest to his wife. Final judgment in the amount of $2,648,715.82 was entered on January 29, 2010. At no time did C&N seek to have the default removed, dispute the claimed damages, or appeal from the entry of final judgment against it. With postjudgment interest accruing at the rate of twelve percent annually, C&N now owes almost $3.7 million. The Boyles have not collected any portion of the default judgment.
The Boyles waited until May 10, 2011, to inform Zurich about the default judgment that had been entered against C&N more than two years earlier. They did so by sending a c. 93A demand letter asking Zurich to pay treble the amount of C&N’s default judgment, plus unspecified attorneys fees and expenses.
Zurich responded to the Boyles’ demand letter on June 9, 2011. It took the position that if the Boyles’ claims were covered by the Zurich policy, they would be subject to the $50,000 policy limit. It offered to settle the Boyles’ claims by paying $50,000 plus twelve percent interest running from the date the default judgment was entered, for a total of $68,598. The offer was not conditioned on the Boyles compromising the default judgment they had obtained against C&N. The Boyles rejected this offer. They commenced this civil action on June 27, 2011.
C&N did not assign any rights that it may have against Zurich, under G.L.c. 93A and c. 176D or otherwise. Thus, the Boyles are suing to enforce only their own rights, and may not press any separate claim on behalf of C&N.
2. The Chapter 93A Safe Harbor for Reasonable Settlement Offers
The Boyles argue that Zurich’s settlement offer was unreasonable as a matter of law because it is far less than the amount that they are likely to recover on their claims under G.L.c. 93A and c. 176D. They assert that if they prevail in this case they will be entitled to *141 recover at least twice the C&N default judgment, or roughly $7.4 million, and that therefore Zurich’s $68,598 settlement offer is unreasonable as a matter of law. This argument is without merit.
The Legislature has created a statutory safe harbor that allows any c. 93A defendant, including an insurance company, to avoid liability for multiple damages by offering, within thirty days of receiving a demand letter, to pay an amount that is “reasonable in relation to the injury actually suffered by the petitioner.” G.L.c. 93A, §9(3).
The benchmark for determining whether Zurich’s settlement offer was reasonable under the §9(3) safe harbor is whatever amount Zurich should have paid the Boyles at an earlier time under the insurance policy Zurich had issued to C&N, plus the amount of interest that the Boyles could have earned on that amount if it had been paid in a timely manner. The Boyles claim that they were injured by Zurich’s alleged refusal to pay their claims without conducting a reasonable investigation and by Zurich’s alleged failure to settle their claims promptly even though its insured’s liability had become reasonably clear, in violation of G.L.c. 176D, §3(d), (f), and (m). As a matter of law, the injury that the Boyles actually suffered as a result of these alleged breaches was the loss of use of the money that Zurich was obligated to pay them under the C&N policy. See Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486, 497 & 499 n.19 (2012); Kapp v. Arbella Mut Ins. Co., 426 Mass. 683, 686 (1998); Clegg v. Butler, 424 Mass. 413, 424-25 (1997).
The §9(3) safe harbor applies even where, as here, the injury actually suffered by the claimants is far less than the multiple damages they would be entitled to collect if they proved at trial that the insurer or other defendant committed a willful or knowing violation of c. 93A. Kohlv. Silver Lake Motors, Inc., 369 Mass. 795, 797-803 (1976). If a settlement offer is reasonable compared to the actual injury, then the c. 93A claimant may only recover “the relief tendered (plus attorneys fees incurred prior to the date of the buyer’s rejection of the tender . . .), even if the [defendant’s] conduct was a willful or knowing violation of the act.” Id. at 797. If the Boyles were to make such a showing of a willful or knowing violation in this case then they would be entitled to collect double to treble the amount of the default judgment entered against C&N. See Rhodes, 461 Mass, at 498-501 (construing the portion of G.L.c. 93A, §9(3), providing that, “[flor the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction of occurrence”). But in a case like this calculating multiple damages under c. 93A based on the underlying judgment is a penalty aimed at “insurers who engaged in unfair claim settlement practices,” not a measure of the injury actually suffered by a claimant who was entitled to an earlier insurance settlement. Id. at 498 & 499 n.19. A party injured by a willful or knowing violation of c. 93A may not recover multiple damages “if the injured party has rejected a reasonable offer of settlement made in accordance with the requirements of §9(3).” Kohl, 369 Mass, at 803. “[T]he statute contemplates that even a willful or knowing violator of §2 [of G.L.c. 93A] may limit his maximum potential damages,” and avoid punitive damages, “by making a reasonable offer of settlement” that fairly compensates the claimant for his or her actual injury. Id.
The fact that Zurich did not make its settlement offer until long after the default judgment was entered against C&N is irrelevant. The Boyles waited to serve Zurich with a c. 93A demand letter until May 2011, some 27 months after the default judgment was entered against C&N. But since the Boyles waited until then to serve its demand letter, as a matter of law Zurich would be entitled to invoke the §9(3) safe harbor so long as it made a reasonable settlement offer within 30 days.
General Laws c. 176D, §3(9)(f), and G.L.c. 93A, §9, together require an insurer such as the defendant promptly to put a fair and reasonable offer on the table when liability and damages become clear, either within the thiriy-day period set forth in G.L.c. 93A, §9(3), or as soon thereafter as liability and damages make themselves apparent.
Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 566 (2001). It is undisputed that Zurich responded to the Boyles’ demand letter within thirty days by offering to pay what it considered to be the $50,000 policy limits plus interest.
3. The Reasonableness of Zurich’s Policy Limits Offer
In “asserting the protection of the statutory limitation of damages appearing in [G.L.c. 93A], §9(3),” Zurich “has the burden of proving the reasonableness of the settlement tendered.” Kohl, 369 Mass, at 799. If Zurich were correct that its exposure excluding punitive damages and attorneys fees was limited to the $50,000 coverage limit in the C&N insurance policy, then its offer to pay that amount plus interest would have been reasonable and Zurich would be entitled to the protections of the c. 93A safe harbor. See Rhodes, 461 Mass, at 505-06.
As explained below, however, Zurich has not shown that its liability is limited to $50,000 plus interest as a matter of law. Because resolution of that issue turns on disputed issues of material fact, Zurich is not entitled to summary judgment. See generally Molly A. v. Commissioner of Department ofMentalRetardaiion, 69 Mass.App.Ct. 267,284, rev. denied, 449 Mass. 1111 (2007).
a. Zurich’s Potential Liability to the Boyles for the Default Judgment
If Zurich breached its duty to defend C&N, then Zurich would have a duty to compensate C&N—and *142 thus also have a duty to compensate the Boyles— under either of two theories of liability. See Metropolitan Property and Casualty Ins. Co. v. Morrison, 460 Mass. 352, 359-61 (2011). “(W)here an insurer commits a breach of its duty to defend and the insured defaults,” as C&N did in this case, “the insurer is bound by the factual allegations in the complaint as to negligence in determining whether the insurer has a duty to indemnify” under the terms of the insurance policy. Id. at 361. In addition, “a breach of the duty to defend is a breach of the insurance contract, and the insured is entitled to contract damages caused by the breach.” Id. at 359. Under this alternative theory of liability, “an insurer’s obligation to pay the default judgment arises from its breach of contract, not its duty to indemnify, but the financial consequence [may be] the same—the insurer is responsible for payment of the default judgment.” Id. at 360.
The Boyles have standing to seek payment directly from Zurich by enforcing its duty to indemnify C&N under the insurance policy and its duty to compensate C&N for any breach of that insurance contract. With respect to the duty to indemnify, now that final judgment has entered against Zurich’s insured the Boyles are “entitled to have the insurance money applied to the satisfaction of the judgment.” G.L.c. 175, §113; accord Davis, 434 Mass, at 180. Even if final judgment has not yet entered, if an insurer breaches its duty to indemnify its insured and thereby commits an unfair claim settlement practice in violation of G.L.c. 93A and c. 176D, as the Boyles claim here, both the injured third party and the insured may sue the insurer directly. Clegg, 424 Mass, at 418; Van Dyke v. St. Paul Fire & Marine Ins. Co., 388 Mass. 671, 674-75 (1983); see also Rhodes, 461 Mass, at 501 (same as to third-party claimants’ standing to seek multiple damages for c. 176D violation under c. 93A). With respect to the duty to compensate for breach of contract, the Boyles are intended third-party beneficiaries of and thus may enforce the insurance contract provisions for bodily injury coverage. See Flattery v. Gregory, 397 Mass. 143, 151 (1986).
The Boyles’ reliance on Zurich’s duty to indemnify C&N under the policy is nonetheless misplaced, because that duty is subject to the $50,000 policy limit. The Boyles correctly note that if Zurich breached its duty to defend then it is bound by the default judgment entered against C&N, both as to the fact of C&N’s negligence and as to the amount of C&N’s legal liability to the Boyles. See Metropolitan Property, 460 Mass, at 360-61. But Metropolitan Property did not address whether an insurer that has breached its duty to defend is liable for the entire amount of a default judgment that exceeded an insurer’s policy limits. In these circumstances, Zurich’s duty to indemnify C&N continues to be subject to the $50,000 policy limit, even though a much larger default judgment entered after Zurich failed to take any steps to defend its insured. See Davis, 434 Mass, at 176, 181-83 (where insurer breaches duty to accept reasonable settlement offer, and as a result a judgment in excess of policy limits is entered against insured, insurer’s contractual obligation to pay postjudgment interest on full amount of judgment continues until insurer tenders policy limits). If Zurich breached its duty to defend against the Boyles’ claim, that would not waive the express dollar limits on the insurance coverage it provided to C&N. Cf. Merrimack Mut. Fire Ins. Co. v. Nonaka, 414 Mass. 187, 191 (1993) (“whatever may be the scope of waiver in the law of insurance, it does not extend to the broadening of the coverage, so as to make the policy cover a risk not within its terms. That would require a new contract, and cannot be accomplished by waiver” (quoting Palumbo v. Metropolitan Life Ins. Co., 293 Mass. 35, 37-38 (1935)). The Boyles have not contested Zurich’s position that the $50,000 coverage limit in the Zurich policy applies to the aggregate amount owed to the Boyles, and that Mrs. Boyle’s claim for loss of consortium is not subj ect to a separate $50,000 policy limit. Cf. Santos v. Lumbermens Mut. Casualty Co., 408 Mass. 70, 79 (1990).
In contrast, Zurich may be liable under a breach of contract theory for the full amount of the excess judgment entered against C&N, without regard to its policy limits, if the Boyles can prove that Zurich breached its duty to defend C&N. See Metropolitan Property, 460 Mass, at 359-60. “[A]n insurer who has committed a breach of its contractual duty to defend its insured is liable ‘for the natural consequences of [the] breach of contract that places its insured in a worse position!.] ’ ” Liquor Liability Joint Underwriting Ass’n of Mass. v. Hermitage Ins. Co., 419 Mass. 316, 323 (1995), quoting Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 764 (1993).
Under the circumstances of this case, the Boyles may be able to demonstrate that a breach of contract by Zurich also violates G.L.c. 93A. “Not every breach of contract constitutes a violation of G.L.c. 93A, but a knowing violation of contractual obligations for the purpose of securing unwarranted benefits does” (internal citation omitted). Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass.App.Ct. 502, 507 (2004). A breach of contract may constitute an unfair or deceptive trade practice that violates c. 93A if “the nature, purpose, and effect of the challenged conduct is coercive or extortionate.” Id.; accord, e.g., Zabinv. Picciotto, 73 Mass.App.Ct. 141', 169 (2008), rev. denied, 453 Mass. 1103, 1105 (2009). Where an insurer fails to pay what it owes under an insurance contract, its actions might have “an extortionate purpose of using litigation to pry contributions” from its insured or coercing someone whose injury is covered by the policy to accept less than they are legally entitled to receive. Transamerica Ins. Group v. Turner Const. Co., 33 Mass.App.Ct. 446, 453 (1992) (dictum); see generally Anthony’s Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 474 (1991) (“conduct ‘in disregard of known contractual arrangements’ and intended to secure *143 benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes” (quoting Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 857 (1986)). Here, not only did Zurich fail to defend C&N from the outset, it also failed to step in after the Boyles notified Zurich that a damages assessment hearing had been scheduled. “[A] fact finder must decide” at trial whether Zurich’s conduct “constitute, in all the circumstances, an unfair or deceptive act or practice.” See Davis v. Allstate Ins. Co., 434 Mass. 174, 187 (2001) (vacating summary judgment on ground that whether insurer violated c. 93A by unreasonably delaying payment of policy limits plus interest after final judgment entered against insured had to be resolved at trial).
In any case, the Boyles are entitled to press a claim against Zurich for breach of contract that does not violate G.L.c. 93A, even though their complaint does not expressly state such a legal theory. A complaint may allege facts plausibly suggesting that plaintiffs have a legally viable claim even if the complaint does not specify the correct legal theory. Gallant v. City of Worcester, 383 Mass. 707, 709 (1981). Similarly, if a summary judgment evidentiary record demonstrates that plaintiffs have a viable claim on some legal theory, and that theory is consistent with the facts alleged in the complaint, then the defendant is not entitled to summary judgment even if the viable theory was not specified in the complaint. Ku v. Town of Framingham, 53 Mass.App.Ct. 727, 729-30 (2002). The Boyles may wish to seek leave to amend their complaint to add an explicit claim for breach of contract. But they would be entitled at trial to press any legal theory fairly raised by the allegations in their complaint, even if that theory is not expressly invoked in the complaint. See Republic Floors of New England, Inc. v. Weston Racquet Club, Inc., 25 Mass.App.Ct. 479, 487 (1988).
In sum, the Boyles have presented evidence suggesting that if Zurich breached its duly to defend C&N then it may be obligated—under G.L.c. 93A or by contract—-to pay the Boyles far more than the amount offered by Zurich to settle this case. If so, then Zurich’s settlement offer was not reasonable.
b. Zurich’s Potential Liability - for Postjudgment Interest
Even if Zurich had not breached its duty to defend, or even if such a breach would not make Zurich potentially liable to the Boyles for the full amount of C&N’s default judgment, Zurich would still be obligated under its policy to pay the Boyles postjudgment interest that far exceeds its settlement offer, so long as the Boyles’ tort claims against C&N were covered by Zurich’s policy. As noted above, the Boyles are now judgment creditors of C&N with a right to reach and apply all amounts that Zurich owes to C&N under its insurance policy. See G.L.c. 175, §113.
The extent of Zurich’s obligation to pay postjudgment interest is established by the terms of its policy. Davis, 434 Mass, at 179. “[C]onstruing the language of an insurance contract is a question of law for the trial judge.” Thattil v. Dominican Sisters of Charity of the Presentation of the Blessed Virgin, Inc., 415 Mass. 381, 385 n.6 (1993), quoting Cody v. Connecticut Gen. Life Ins. Co., 387 Mass. 142, 146 (1982). “Because the language of the standard [automobile insurance] policy is prescribed by statute and controlled by the Division of Insurance rather than the individual insurer,” see G.L.c. 175, §113A, “the rule of construction resolving ambiguities in a policy against the insurer is inapplicable.” McNeill v. Metropolitan Prop. & Liab. Ins. Co., 420 Mass. 587, 589 (1995), quoting Bilodeau v. Lumbermens Mut. Casualty Co., 392 Mass. 537, 541 (1984). “Instead, [the Court] must ascertain ‘the fair meaning of the language used, as applied to the subject matter.’ ” Id.
To determine the scope of Zurich’s contractual obligation to pay postjudgment interest in excess of its policy limits, the Court must construe the following provisions of Zurich’s policy:
We have the right to defend any lawsuit brought against anyone covered under this coverage for damages which might be payable under this coverage. We also have a duty to defend any lawsuit, even if it is without merit. Our duty to defend ends, however, when we tender, or pay to any claimant, or to a court of competent jurisdiction, with the court’s permission, the maximum limits provided under this coverage. We may end our duty to defend at any time during the course of the lawsuit by tendering or paying the maximum limits provided under this coverage, without the need for a judgment or settlement of the lawsuit or a release by the claimant.
[[Image here]]
In addition to the Limit of Insurance, we will pay for the insured: . . .
(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any “suit” against the “insured” we defend; but our duty to pay interest ends when we have paid or deposited in court the part of the judgment that is without our Limit of Insurance."
Zurich argues that the “we defend” language in the postjudgment interest provision means that Zurich is only liable for such interest where it actually defends the litigation, and is not liable if it does nothing as in this case. But the Court may not construe this provision in isolation. See, e.g., Mejia v. American Casualty Co., 55 Mass.App.Ct. 461, 465 (2002). Rather, it must “construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose.” Sullivan v. Southland Life Ins. Co., 67 Mass.App.Ct. 439, 442 (2006), quoting Massachusetts Property Ins. Underwriting Assn. v. Wynn, 60 Mass.App.Ct. 824, 827 (2004).
*144 “Fairly interpreted,” the duty-to-defend and postjudgment interest “provisions together authorized and obligated” Zurich “to:
(1) defend any lawsuit brought against its insured within the policy’s coverage ‘even if [the lawsuit] is without merit’;
(2) settle any claim or lawsuit as it saw fit;
(3) terminate its duty to settle or defend by paying the claimant the maximum limits of coverage; and
(4) pay posijudgment interest until it offers to pay the limits of coverage."
Davis, 434 Mass, at 179-80 (construing similar provisions of standard Massachusetts personal automobile insurance policy).
Zurich is bound by its contractual obligation to pay postjudgment interest even though it failed to defend C&N. Zurich’s argument to the contrary is incorrect as a matter of law. If the Boyles’ claims were covered, the plain language of the policy gave Zurich two options once it learned of their tort suit: it could defend those claims or settle them. The policy does not give Zurich a third option of ignoring covered claims and failing either to defend or settle them. Zurich may not evade its contractual obligation to pay postjudgment interest by turning a blind eye to covered claims and breaching its duty to defend.
The Boyles have presented evidence that if their claims were covered by Zurich’s policy then the settlement offer was not reasonable because Zurich would be liable to pay postjudgment interest in addition to any policy limit on coverage for the damages awarded against C&N. It is undisputed that Zurich did not defend C&N against the Boyles’ claims, even once the Boyles notified Zurich in September 2009 of the pending damages assessment hearing, and that Zurich did not offer to settle for its policy limit until June 2011, roughly 27 months after the default judgment was entered against C&N. By June 9, 2011, roughly $425,000 in postjudgment interest had accrued on the judgment against C&N. If the Boyles’ claims were covered by Zurich’s policy, then as a matter of law Zurich must pay this interest. See Davis, 434 Mass, at 180-84.
c. Factual Disputes Regarding Zurich’s Duty to Defend and Coverage Obligations
Zurich contends that it had no duty to provide coverage under its insurance policy and thus no duty to defend the Boyles’ claims because C&N allegedly failed to notify Zurich about the Boyles’ lawsuit. The policy provides that Zurich had no duty to provide coverage unless C&N “immediately” sent Zurich copies of any summons concerning any claim or lawsuit. By law, even if Zurich did not receive such notice from C&N, it could not avoid its obligations to provide insurance coverage to C&N unless Zurich could prove that it was prejudiced as a result. SeeG.L.c. 175, §112; Darcy v. Hartford. Ins. Co., 407 Mass. 481, 485-86 (1990). ‘To prove prejudice, generalities are insufficient. Instead, the insurer must identify ‘the precise manner in which its interests have suffered.’ ” Pilgrim Ins. Co. v. Molard, 73 Mass.App.Ct. 326, 337 (2008), quoting Darcy, 407 Mass, at 486-87.
Whether C&N sent a copy of the Boyles’ summons and complaint in the underlying action to Zurich is a disputed question of fact. Zurich filed an affidavit from one of its claims representatives stating that Zurich has no record of being notified of the Boyles’ lawsuit against C&N at any time prior to September 2009, when the Boyles’ counsel notified Zurich of the scheduled damages assessment hearing. But this assertion is disputed by an affidavit from C&N’s former owner stating that he sent the Boyles’ complaint to Zurich shortly after having been served with it. Even if Zurich could prove that it never received notice of the Boyles’ suit from C&N, whether Zurich was prejudiced as a result would be a further question of fact that would have to be resolved at trial. See Darcy, 407 Mass, at 487; Pilgrim Ins., 73 Mass.App.Ct. at 337-39.
These disputed issues of fact are material for the reasons discussed above. As a result, Zurich is not entitled to summary judgment.
ORDER
The motion by defendant Zurich American Insurance Company for summary judgment is DENIED.