Salinger, Kenneth W., J.
The Court previously denied Zurich American Insurance Company’s motion for summaiy judgment [31 Mass. L. Rptr. 139). Plaintiffs Joseph and Janice Boyle claim that Zurich breached contractual and statutory duties to defend and indemnify C&N Corporation and Nicolas Rago against tort claims that resulted in a $3.7 million default judgment in favor of the Boyles, and to settle those claims once the liability of Zurich’s insureds became reasonably clear. Zurich sought summaiy judgment on the ground that its offer to pay the Boyles its $50,000 policy limit plus interest—made more than sixteen months after the Boyles had already obtained the default judgment against C&N and Rago—fully satisfies Zurich’s obligations and insulates it from any additional liability under G.L.c. 93A. The Court disagreed, holding that if Zurich was given adequate notice of the underlying tort action—which is a disputed issue of material fact—then Zurich maybe liable to the Boyles for far more than its policy limits, either because Zurich breached its duly to defend and settle the Boyles’ claims, or because Zurich’s duly to indemnify its insureds includes an obligation to pay postjudgment interest, or for both reasons.
The Court has now reconsidered its prior decision at Zurich’s request. Having done so, the Court again concludes that Zurich is not entitled to summaiy judgment. Zurich correctly notes that the Boyles were not intended third-party beneficiaries of Zurich’s contractual duly to defend C&N and Rago. But this point is moot now that the Boyles have obtained a valid assignment at least from C&N of its rights against Zurich. This assignment gives the Boyles standing to sue Zurich for breaching its contractual duty to defend C&N and for violating G.L.c. 93A by failing to settle the Boyles’ tort claims. The most recent assignment of C&N’s rights against Zurich to the Boyles is valid as a matter of law. Although C&N was administratively dissolved in May 2007, C&N remained in existence and could assign its claims against Zurich. Plus, C&N has now been reinstated and the Boyles have obtained a new assignment from C&N executed by the corporation’s current president.
It may not matter whether Rago’s assignment to the Boyles of his separate claims against Zurich is also valid. C&N and Rago are jointly and severally liable to the Boyles. The Boyles may therefore be able to recover in full from Zurich based on C&N’s assignment of its rights whether or not they also have the power to seek compensation based on Rago’s independent rights against Zurich.
The Court concludes, however, that Rago’s assignment of his rights against Zurich will be valid if and when the trustee of Rago’s bankruptcy estate were to abandon Rago’s rights against Zurich. If the Boyles wish to press any claims belonging to Rago they must first give the bankruptcy trustee the opportunity either to step in and prosecute those claims on behalf of Rago’s bankruptcy estate or to abandon those claims and allow the Boyles to prosecute them in Rago’s stead. If the trustee abandons those claims and allows them to revert to Rago, then Rago’s assignment to the Boyles will be valid. Zurich’s other attacks on Rago’s assignment are without merit. The fact that Rago’s personal liability to the Boyles was discharged in bankruptcy does not insulate Zurich from its own potential liability, under the Bankruptcy Code or under Massachusetts law. Although the Boyles’ new *398 “Agreement for Final Judgment” with Rago is barred by his discharge in bankruptcy, the separate assignment of Rago’s claims to the Boyles is supported by separate and adequate consideration of one dollar. And the fact that Rago did not disclose his potential claims against Zurich in his bankruptcy case does not mean that Rago’s assignees should be judicially es-topped from suing Zurich.
Nor has Zurich identified any other reason for the Court to judicially estop the Boyles from claiming that Zurich breached its duty to defend its insureds. There is no inconsistency between the Boyles’ prior, successful claims for tort damages and their new assertion that Zurich could have settled those claims for much less money than was awarded in the default judgment.
Zurich’s arguments regarding its liability for postjudgment interest merely repeat points that the Court has already considered and rejected. As the Court previously explained, Zurich cannot evade its contractual obligation to pay postjudgment interest by ignoring and failing to defend a covered claim.
Finally, the Court concludes that neither its original summary judgment decision nor this further ruling on reconsideration should be reported to the Appeals Court for immediate review under Mass.R.Civ.P. 64(a).
1. Undisputed Material Facts, New Claims, and Assignment of Claims Against Zurich
Most of the undisputed material facts that give rise to the Boyles’ claims in this action are summarized in the Court’s prior decision. In short, Joseph Boyle was seriously injured when a truck tire exploded at a repair shop run by C&N Corporation, which was owned by Nicolas Rago. Since Rago had affixed C&N’s repair plate to the truck, both Rago and C&N were insured for liabilfiy up to $50,000 under a business auto policy issued by Zurich. Boyle and his wife sued C&N and Rago for negligence. After Zurich failed to defend the suit or even investigate the Boyles’ claims, and C&N and Rago failed to appear, a default judgment now worth more than $3.7 million was entered in favor of the Boyles.
Rago filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code in May 2010, roughly four months after the Boyles obtained their default judgment against him. Rago obtained a bankruptcy discharge of his personal liability in October 2010. The Boyles filed this action against Zurich in June 2011, after Rago’s personal liability to them had been discharged.
At the time of the Court’s original decision on Zurich’s motion for summary judgment, the complaint asserted claims against Zurich under G.L.c. 93A for violating G.L.c. 176D. Since then the Boyles have been given leave (by Wilkins, J.) to amend their complaint to conform it to the Court’s prior summary judgment decision by adding claims against Zurich for breach of the insurance policy it had issued to C&N and to reach and apply the policy limits of that policy plus postjudgment interest.
In response to Zurich’s motion for reconsideration, the Boyles obtained assignments by C&N and. Rago of all claims and rights that they may have against Zurich, including any claims for breach of Zurich’s duties under the policy it issued to C&N to defend and indemnify C&N and Rago against the Boyles’ tort claims, and any other claims against Zurich that arise from the Boyles’ tort suit. Both assignments were originally executed on May 28, 2013. Since then, C&N obtained reinstatement of its status as an active corporation and gave the Boyles a second assignment of C&N’s claims against Zurich, signed by C&N’s president rather than by Rago. These new facts are undisputed.
2. Zurich’s Potential Liability for Breaching Duty to Defend
The Court reaffirms its prior conclusion that the Boyles may sue Zurich for breaching its duty to defend C&N and Rago, albeit for different reasons than before.
a. Standing as Intended Beneficiaries of Duty to Defend
The Court previously held that, under Flattery v. Gregory, 397 Mass. 143, 151 (1986), the Boyles are intended beneficiaries of and thus may enforce Zurich’s contractual duty to indemnify C&N and Rago under the business automobile policy, but that the duty to indemnify is subject to the $50,000 policy limit. Zurich does not challenge either of those rulings. (Zurich’s renewed attack on the Court’s conclusion that Zurich owes the Boyles postjudgment interest in addition to the policy limit is addressed below.) The Court also ruled that the Boyles may be able to recover the full amount of the judgment entered against C&N and Rago, without regard to the policy limits, if the Boyles can prove that Zurich breached its separate duty to defend its insureds. In so doing the Court assumed, without expressly deciding, that the Boyles are also intended beneficiaries of the contractual duty to defend.
This assumption that the Boyles were intended third-party beneficiaries of Zurich’s duty to defend its insureds was mistaken. Parties asserting tort claims against someone insured under a liability insurance policy “cannot be said to be beneficiaries, intended or otherwise, of [the insurer’s] promise to defend.” See Chicago Ins. Co. v. Lappin, 58 Mass.App.Ct. 769, 784 (2003) (distinguishing Flattery). Although the Boyles were intended beneficiaries of the duty to indemnify C&N and Rago, it does not follow that they were also intended beneficiaries of the duty to defend. Id.; see generally The James Family Charitable Foundation v. State StreetBank and Trust Co., 80 Mass.App.Ct. 720, 725 (2011) (“One need not be a beneficiary of every provision of the contract in order to be an intended beneficiary with enforceable rights; it is enough to be *399 the intended beneficiary of the promise one is seeking to enforce”).
But Zurich is not entitled to summary judgment on this basis because, as explained below, the Boyles may assert claims as C&N’s assignee.
b. Standing as Assignees of Zurich’s Insureds
The Boyles have now obtained assignments from C&N and Rago of their claims and rights against Zurich. The assignment by C&N is valid as a matter of law. The assignment by Rago will be valid if the bankruptcy trustee decides to abandon Rago’s claims against Zurich and allow the Boyles to pursue them instead. Either way, the Boyles now have standing to sue Zurich for breaching its duty to defend, at least with respect to the resulting harm to C&N caused by the Boyles’ excess judgment.
i. Adequacy of Amended Complaint
Zurich insists that the Court should reconsider Zurich’s motion for summary judgment without taking into account the undisputed facts that the Boyles have obtained assignments from C&N and Rago of their rights against Zurich, because those new facts are not alleged in the Boyles’ amended complaint. That argument is unavailing.
The new assignments need not be alleged in the complaint. The assignments give the Boyles capacity to sue Zurich for breaching its duty to defend C&N and Rago. “It is not necessary to aver the capacity of a party to sue[.]” Mass.RCiv.P. 9(a). To the contrary, the burden is on Zurich, as the party challenging the Boyles’ capacity to sue, to raise that issue “by specific negative averment.” Id. There is no inconsistency between the allegations made in the amended complaint and the fact that the Boyles have now obtained assignments of C&N’s and Rago’s rights.
Furthermore, Zurich’s motion for reconsideration of its motion for summary judgment turns on whether the undisputed material facts show that Zurich is entitled to judgment as a matter of law. Since “a complaint is not properly challenged by a motion for summary judgment,” Zurich may not use its request for summary judgment as a mechanism to challenge the legal sufficiency of the amended complaint. See Smith v. Massimiano, 414 Mass. 81, 85 (1993). “[A] summary judgment motion ‘concedes the validity of the pleading,’ and, unlike rule 12 motions [to dismiss], focuses on the merits of the controversy.” Id., quoting J.W. Smith & H.B. Zobel, Rules Practice 347 (1977 & 1993 Supp.). Since the undisputed material facts demonstrate that the Boyles have viable claims, Zurich would not be not entitled to summary judgment even if the legal grounds for those claims are not fully specified in the amended complaint. See Ku v. Town of Framingham, 53 Mass.App.Ct. 727, 729-30 (2002).
ii. Validity of C&N’s Assignment
The Boyles have obtained a valid assignment of C&N’s rights against Zurich, even though C&N had previously been dissolved and even though the first assignment by C&N was signed by Rago rather than by a current officer of C&N.
The Court takes judicial notice that, according to public records maintained by the Secretary of the Commonwealth, C&N was administratively dissolved on May 31, 2007, roughly fourteen months before the Boyles filed suit against C&N and Rago. Cf. Tilcon-War-ren Quarries, Inc. v. Commissioner of Revenue, 392 Mass. 670, 671 n.4 (1984) (court may take judicial notice of public records, including records of corporations maintained by state officials). C&N then “continue[d] its corporate existence,” but was only allowed to undertake activities “necessary in connection with winding up and liquidating its business and affairs.” G.L.c. 156D, §14.05. Although the prior business corporation statute provided that dissolved corporations generally have only three years to wind up their affairs, see G.L.c. 156B, §102, that provision has been superseded by G.L.c. 156D, §14.05, which took effect on July 1, 2004, and which does not impose such a three-year limitation. See St. 2003, c. 127, §17 and §24 (as amended by St. 2004, c. 178, §§48).
Since C&N was still in existence despite its dissolution, it had the power to assign any claims or rights it may have against Zurich as part of its continuing power to do any “act necessary to wind up and liquidate its business and affairs.” G.L.c. 156D, § 14.05(a)(5). The new Massachusetts Business Corporation Act “expressly reverses all of the[ ] common law attributions of [corporate] dissolution and makes clear that the rights, powers, and duties of shareholders, the directors, and the registered agent are not affected by dissolution and that suits by or against the corporation are not affected in any way.” See Comment to §14.05, 25A Mass. Gen. Laws Ann. 52 (2005). Thus, the dissolution of C&N did not bar the Boyles from asserting and prosecuting claims against C&N in its corporate name. G.L.c. 156D, §14.05(b)(5) & (6). Nor did it bar the Boyles from collecting on their default judgment against C&N to the extent that the corporation had any undistributed assets. G.L.c. 156D, §14.09(a). To the extent that C&N had a viable claim for breach of contract against Zurich, it appears that was an undistributed asset still owned by C&N as of May 28, 2013; it was not transferred upon the dissolution of C&N. See G.L.c. 156D, §14.05.
But C&N’s dissolution is now moot, because C&N was reinstated or revived by the Secretary of the Commonwealth on September 6, 2013. By statute, “the reinstatement relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred!.]” G.L.c. 156D, §14.22(c). All acts taken by C&N’s officers, directors, or shareholders while C&N was in a state of dissolution are deemed “ratified and confirmed.” Id.
*400 It also does not matter whether Rago had the authority to act on C&N’s behalf by signing the original assignment to the Boyles of C&N’s rights against Zurich. It is undisputed that C&N’s president, Car-mello Golisano, executed a new assignment to the Boyles of C&N’s rights on September 9, 2013. That assignment is valid and gives the Boyles the right to sue Zurich for violating the contractual and statutory duties that Zurich owed to C&N.
in. Validity of Rago’s Assignment
The Boyles correctly note that C&N and Rago are jointly and severally liable for the default judgment entered in the underlying tort action, that the Boyles may therefore seek compensation from Zurich based solely on the assignment of rights by C&N, and thus that the scope of damages that the Boyles may seek in this action is unlikely to be affected by whether the separate assignment by Rago is valid or not. The Court holds, however, that Rago’s assignment of rights to the Boyles will be valid if and when the bankruptcy trustee abandons Rago’s claims against Zurich. Alternatively, the bankruptcy trustee may choose to press those claims itself, on behalf of the Boyles and any other remaining unpaid creditors of Rago, or to assign these claims from the bankruptcy estate to the Boyles.
(a) Control of Rago’s Claims by the Bankruptcy Trustee
When Rago filed for bankruptcy protection, his rights and potential claims against Zurich became property of his bankruptcy estate, subject to the control of the bankruptcy trustee. See 11 U.S.C. §541{a)(l) (bankruptcy estate includes “all legal or equitable interests of the debtor in property as of the commencement of the [bankruptcy] case”); Cole v. Pulley, 18 Mass.App.Ct. 950, 951 (1984) (rescript) (for purposes of §541(a)(1), “property” includes “all interests of the debtor in rights of action” (quoting 4 Collier, Bankruptcy par. 541.10(1] (1983)).
It appears that Rago’s claims against Zurich remain part of his bankruptcy estate at present, and thus that Rago’s purported assignment of those claims to the Boyles cannot be valid unless and until the bankruptcy trustee expressly abandons those claims and allows them to revert to Rago. If Rago had listed his claims against Zurich on his schedules of potential assets in his bankruptcy proceeding, then the bankruptcy trustee’s failure to pursue those claims prior to the closing of the bankruptcy case would have resulted in the abandonment of those claims to Rago by operation of law. See 11 U.S.C. §554(c). But Rago faded to list his potential claims against Zurich in the schedules of assets he filed with the bankruptcy court. That failure is undisputed, as it is evident from Rago’s bankruptcy petition and supporting schedules. Since Rago never disclosed his claims against Zurich to the bankruptcy trustee and have not been expressly abandoned by the trustee, those claims still belong to the estate and cannot be pursued or assigned by Rago. See Cole, 18 Mass.App.Ct. at 951; Jeffrey v. Diamond, 70 F.3d 183, 186 (1st Cir. 1995). Property that is neither abandoned nor administered by the bankruptcy trustee remains part of the bankruptcy estate after the bankruptcy case is closed. See 11 U.S.C. §554(d).
Under these circumstances, the Boyles should be given a reasonable period of time to inform the bankruptcy trustee about the situation and learn whether the trustee wishes to reopen the bankruptcy case so that it may pursue or otherwise administer Rago’s claims against Zurich on behalf of all of Rago’s creditors, including the Boyles, or whether the trustee prefers to abandon the claim under 11 U.S.C. §554(a) and allow it to be pursued by Rago’s assignees. See Adams v. Manown, 615A.2d611, 620 (Md. 1992).The Boyles represent that they have already contacted Rago’s bankruptcy trustee to obtain answers to these questions.
If the trustee were to abandon Rago’s claims against Zurich and allow them to revert to Rago, then Rago’s assignment of those claims to the Boyles would be valid. Zurich’s other attacks on that assignment are unavailing.
(b) Effect of Rago’s Bankruptcy Discharge
Zurich’s assertion that Rago’s discharge in bankruptcy left him with “nothing of value to assign” to the Boyles, because the discharge rendered the default judgment against Rago “void as of the date of the discharge,” is without merit. Rago’s bankruptcy discharge did not absolve Zurich of its own potential liability for some or all of Rago’s debt to the Boyles.
Under the United States Bankruptcy Code, “a discharge in a Chapter 7 liquidation... extinguishes only ‘the personal liability of the debtor.’ ” Johnson v. Home State Bank, 501 U.S. 78, 82-83 (1991), quoting 11 U.S.C. §524(a)(l). But it did “not affect the liability of any other entity on, or the property of any other entity for, such debt.” 11 U.S.C. §524(e). Thus, Rago’s “discharge in bankruptcy [did] not extinguish the debt itself[.] . . . [T]he debt still exists and can be collected from any other entity that might be liable.” Matter of Edgeworth, 993 F.2d 51, 53 (5th Cir. 1993). The bankruptcy discharge of an insured’s personal liability does not absolve the liability insurer from its obligations to pay a judgment or claim against the insured. Id. at 53-55; accord, e.g., Green v. Welsh, 956 F.2d 30, 35 (2d Cir. 1992); In re Jet Florida Systems, Inc., 883 F.2d 970, 973-77 (11th Cir. 1989). An insurer like cannot “escape its obligations based simply on the financial misfortunes of the insured.” Matter of Edge-worth, 993 F.2d 54, quoting Jet Florida Systems, 883 F.2d at 975.
The insurance policy that Zurich issued to C&N similarly provides that Zurich cannot avoid liability under the policy merely because an insured receives a discharge of personal liability in bankruptcy. Zurich expressly agreed in Section IV.B.l. of the policy that *401 “Bankruptcy or insolvency of the ‘insured’ or the ‘insured’s’ estate will not relieve us of any obligations under this Coverage Form.”
The obligations that Zurich agreed would survive a bankruptcy of its insureds are not limited to its duty to indemnify up to its policy limits and in addition to pay postjudgment interest. In addition, to the extent that Zurich breached its duty to defend Rago and as a result caused Rago’s debt to the Boyles to be higher than it would otherwise have been, Zurich remains obligated to pay the portion of the excess judgment caused by Zurich’s breach. See generally Metropolitan Property and Casualty Ins. Co. v. Morrison, 460 Mass. 352, 359-60 (2011) (insurer is “liable for damages traceable to its unjustifiable failure to defend, ‘largely to prevent injuiy to the insured, but also to prevent the insurer from profiting from its own wrong’ ” (quoting 14 G. Couch, Insurance §205:64, at 205-71 (3d ed. 2005)); Palermo v. Fireman’s Fund Ins. Co., 42 Mass.App.Ct. 283, 290 (1997) (“An insurer who unjustifiably refuses or fails to defend its insured, even in good faith, assumes the consequential risks of that breach of its insurance contract”). Zurich would therefore be liable to Rago, and thus to Rago’s assignees, if it was required to defend against the Boyles’ tort claims, breached that duty, and as a result lost the opportunity to settle those claims for less than the default judgment. Cf. Deerfield Plastics Co., Inc. v. Hartford Ins. Co., 404 Mass. 484, 485 (1989) (same where workers’ compensation insurer paid settlement with what were in effect insured’s funds, and insured demonstrated that settlement was too high because insurer was negligent in its claim investigation). “When an insurer totally abandons its insured by breaching the duly to defend,” the insurer may be held liable for “a judgment in excess of the policy” if the insured (or its assignee) can demonstrate “that the insurer’s breach . . . cost the insured an opportunity to settle below” or closer to “the policy limits.” National Union Fire Ins. Co. of Pittsburgh, Pa, v. Continental Illinois Corp., 673 F.Sup. 267, 273 (N.D.I11. 1987).
Rago’s insolvency does not insulate Zurich from this potential liability. See DiMarzo v. American Mut. Ins. Co., 389 Mass. 85, 95 n.9 (1983) (“insolvency of the insured would not bar an action against the insurer for violating its duty to act in good faith to settle within the policy limits”); Jenkins v. General Accident Fire & Life Assur. Corp., 349 Mass. 699, 702-03 (1965) (“it is not necessary for the insured to allege that he has paid or will pay a judgment in excess of the policy limits in an action against the insurer for breach of its duly to act in good faith”). Where an insurer breaches its duty to settle claims against an insured, and the insured’s personal liability to pay those claims is discharged in bankruptcy, states like Massachusetts that follow the “judgment rule” hold the insurer “liable for the full excess of the judgment over the policy limits.” Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166, 1176 (D.C.Cir. 2003). The judgment rule will not absolve insurers from liability even where the “insured is bankrupt, insolvent, or otherwise judgment proof.” Farmers Ins. Exchange v. Schropp, 567 P.2d 1359, 1368-69 (Kan. 1977); accord, e.g., Nunn v. Mid-Century Ins. Co., 244 P.3d 116, 121-23 (Colo. 2010); Carter v. Pioneer Mut. Case. Co., 423 N.E.2d 188, 190-92 (Ohio 1981). In contrast, in states that follow the “payment rule” an insurer’s liability is “commonly limited to the debtor’s net assets.” Id. A majority of states join Massachusetts in following the judgment rule and eschewing the payment rule. Gray v. Grain Dealers Mut. Ins. Co., 871 F.2d 1128, 1131 (D.C.Cir. 1989); accord A. Resnick& H. Sommer, 4 Collier on Bankruptcy ¶524.05, at 524-56 (17th ed. 2012) (“It is generally agreed that the debtor’s discharge does not affect the liability of the debtor’s insurer for damages caused by the debtor and that the creditor may seek to recover from the insurer”).
Thus, the fact that the Boyles can no longer recover from Rago personally does not undermine the validity of any assignment of Rago’s rights to the Boyles. See Campione v. Wilson, 422 Mass. 185, 188-94 (1996) (agreement for judgment in excess of policy limits coupled with covenant not to execute does not invalidate an accompanying assignment of insured defendant’s right to sue insurer for negligence); accord Strand v. Travelers Ins. Co., 219 N.W.2d 622 (Minn. 1974) (per curiam) (bankruptcy of insured did not impair assignment of bad faith claim against insurer).
(c) Effect of Potential Invalidity of Settlement Agreement with Rago
The assignment states that it was provided by Rago to the Boyles “[i]n exchange for one dollar ($1.00) and other good and valuable consideration as set forth in the Conditional Release and Settlement Agreement executed” the same day.
Zurich’s challenge to the Conditional Release and Settlement Agreement between the Boyles and Rago may have some merit. That contract purports to release Rago from liability for claims that were already discharged in bankruptcy, requires Rago to cooperate with the Boyles as they pursue claims against Zurich that were assigned to them by Rago, and appears to provide that if Rago breaches this obligation then the Boyles may enforce an “Agreement for Judgment” against Rago. At the very least that latter provision, purporting to allow the Boyles to revive their prior claims against Rago, is barred by the discharge of Rago’s personal liability to the Boyles. See 11 U.S.C. §524(a){2).
But even if the Conditional Release and Settlement Agreement were void or otherwise ineffective in whole or in part, that would not render the separate assignment of Rago’s claims unenforceable. The additional consideration of one dollar that was evidently paid to Rago by the Boyles is sufficient to support the assign *402 ment. Cf. Commonwealth v. Cartwright, 447 Mass. 1015, 1016 (2006) (rescript) (affirming trespass conviction based on evidence that property previously owned by defendant had been conveyed for one dollar); see generally Barry v. Goodrich, 98 Mass. 335, 338 (1867) (“[B]y agreement of parties a thing of veiy little or even nominal value may be a legal consideration for a contract. Even a peppercorn may be sufficient”); Pierce v. Fuller, 8 Mass. 223, 228-29 (1811) (“The consideration of one dollar is in law a valuable consideration”); Lawrence v. McCalmont, 43 U.S. 426, 452 (1844) (“A valuable consideration, however small or nominal, if given or stipulated for in good faith, is, in the absence of fraud, sufficient to support an action on any parol contract; and this is equally true as to contracts of guarantee as to other contracts. A stipulation in consideration of one dollar is just as effectual and valuable a consideration as a larger sum stipulated for or paid”). Zurich makes no claim and cites no authority to the contrary.
(d) Judicial Estoppel Based on Rago’s Failure to Disclose Claims Against Zurich in Bankruptcy
The Court concludes that Rago and his assignees should not be judicially estopped from suing Zurich on the ground that Rago failed to disclose these potential claims in his bankruptcy schedules of assets.
“Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding.” Otis v. Arbella Mut Ins. Co., 443 Mass. 634, 639-40 (2005), quoting Blanchette v. School Comm, of Westwood, 427 Mass. 176, 184 (1998). “Application of the equitable principle of judicial estoppel to a particular case is a matter of discretion.” Id. at 640. “[I]tmaybe appropriate to resist application of judicial estoppel ‘when a parly’s prior position was based on inadvertence or mistake,’ ” id. at 642, quoting New Hampshire v. Maine, 532 U.S. 742, 753 (2001), “or where ‘the position adopted in the first suit was clearly wrong yet had been advanced in good faith by the party now sought to be estopped,’ ” id., quoting Chaveriat v. Williams Pipe Line Co., 11 F.3d 1420, 1428 (7th Cir. 1993).
“[T]he mere fact” that Rago failed to list his potential claims against Zurich as an asset during his bankruptcy proceeding “does not result in the automatic application of the judicial estoppel doctrine,” and does not necessarily require that Rago or his assignees be judicially estopped from asserting those claims against Zurich. GE HFS Holdings, Inc. v. National UnionFire Ins. Co. of Pittsburgh, PA, 520F.Sup.2d213, 223 (D.Mass. 2007) (Gorton, J.); accord Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362-65 (3d Cir. 1996) (failure to disclose claim to bankruptcy court will only trigger judicial estoppel to bar subsequent assertion of claim where lack of disclosure was deliberate—reversing summary judgment granted on judicial estoppel grounds); Brooks v. Beatty, No. 93-1891, 25 F.3d 1037 (1st Cir. 1994) (unpublished) (same, reversing summary judgment granted on judicial estoppel grounds); Marley v. Bank of America, No. 10-10885-GAO, 2010 WL 5207584 (D.Mass. 2010) (OToole, J.) (same, denying motion for summary judgment in absence of evidence that plaintiff had intentionally misled bankruptcy court by not disclosing claim). Indeed, many courts have concluded that applying judicial estoppel to bar the subsequent assertion of a previously unscheduled claim is generally not an appropriate remedy for a debtor’s failure to disclose a potential claim during a bankruptcy proceeding. See WinMark Ltd. Partnership v. Miles & Stockbridge, 693 A.2d 824, 827-31 (Md. 1997) (agreeing with and collecting cases holding that party whose debts were discharged in bankruptcy is not judicially estopped from bringing post-confirmation claim that it failed to disclose as potential asset in bankruptcy proceedings).
Parties who fail to identify a legal claim in bankruptcy schedules may escape the application of judicial estoppel if they can show that they “either lack[ed] knowledge of the undisclosed claims or ha[d] no motive for their concealment.” Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1157 (10th Cir. 2007); see also Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1275 (11th Cir. 2010) (same); Eubanks v. CBSKFin. Group, Inc., 385 F.3d 894, 898 (6th Cir. 2004) (same); In re Coastal Plains, Inc., 179 F.3d 197, 210 (5th Cir. 1999) (same).
It would be inappropriate under the circumstances of this case to judicially estop Rago’s assignees from suing Zurich on the ground that Rago failed to disclose these claims as an asset of his bankruptcy estate, because Zurich has presented no evidence that Rago’s failure to list his potential claim against Zurich during the bankruptcy proceeding was done in bad faith “or intended in any way to harm or deceive his creditors,” and because doing so “would create a potential windfall for” Zurich. GE HFS Holdings, 520 F.Sup.2d at 225-26, quoting Graupner u. Town of Brookfield, 450 F.Sup.2d 119, 129 (D.Mass. 2006) (Saylor, J.). The Court therefore exercises its discretion not to judicially estop the Boyles’ assertion of Rago’s rights against Zurich on this ground.
c. Judicial Estoppel Based on Alleged Inconsistency by the Boyles
Nor would it be appropriate to judicially estop the Boyles on the ground that their claims against Zurich in this action are barred by their success against C&N and Rago in the prior tort action. The Court agrees with Zurich that the Boyles may not argue here that if only Zurich had defended the prior case then either C&N or Rago would have prevailed in the prior action or a jury would have awarded substantially lower damages. See Sandman v. McGrath, 78 Mass.App.Ct. 800, 804 (2011). But, in the exercise of its discretion, the Court concludes that the Boyles are not judicially estopped from claiming that C&N and Rago would *403 have been able to settle the Boyles’ claims for much less than the default judgment if Zurich had defended the prior action. Id. at 804-05.
Zurich is correct in arguing that the Boyles may not take a position in this case that is inconsistent with a position that they successfully took in the underlying tort case. “(J)udicial estoppel will normally be appropriate whenever ‘a party has adopted one position” in a legal proceeding, “secured a favorable decision” from the court, “and then taken a contradictory position” in a subsequent case “in search of legal advantage.” Otis, 443 Mass, at 640, quoting InterGenN.V. v. Grind, 344 F.3d 143, 144 (1st Cir. 2003). Allowing a party to seek advantage from taking “mutually exclusive” positions in different court proceedings would “create! ] the appearance that either the first court had been misled or the second court will be misled, thus raising the specter of inconsistent determinations and endangering the integrity of the judicial process.” Id., 443 Mass, at 639 & 643, quoting Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 33 (1st Cir. 2004).
Zurich is also correct in arguing that the doctrine of judicial estoppel applies with full force even though the Boyles obtained a judgment based on an assessment of damages after C&N and Rago were defaulted, rather than a judgment based on a jury verdict after trial as in Otis. The default judgment reflects a determination that the Boyles’ complaint in the prior case stated viable claims and that the Boyles had presented evidence of substantial damages. See, e.g., Jones v. Boykan, 464 Mass. 285, 293 (2013) (if defendant is defaulted, plaintiff must prove damages through competent evidence); Marshall v. Stratus Pharmaceuticals, Inc., 51 Mass.App.Ct. 667, 670-71 (2001) (default merely establishes truth of factual allegations in complaint; “the question whether an adequate statement of a claim for relief has been made . . . remains open.” (quoting Multi Technology, Inc. v. Mitchell Mgmt. Sys., Inc., 25 Mass.App.Ct. 333, 334-35, rev. denied, 402 Mass. 1101 (1988)). The Boyles’ success in the prior action is therefore sufficient to implicate the doctrine of judicial estoppel and preclude them from taking a directly inconsistent position in this case. “Unlike the doctrine of issue preclusion, judicial estoppel does not require that the issue have been actually litigated in the prior proceeding.” Thore v. Howe, 466 F.3d 173, 181 (1st Cir. 2006); accord, e.g., Maine Educ. Ass’n v. Maine Community College SystemBd. of Trustees, 923 A.2d 914, 917 (Maine 2007); Whitacre Partnership v. Biosignia, Inc., 591 S.E.2d 870, 881 (N.C. 2004); In re Adoption ofS.A.J„ 838 A.2d 616, 623 (Penn. 2003); Montrose Medical Group Participating Savings Plan v. Bulger, 243 F.3d 773, 779 n.3 (3d Cir. 2001); Lowery v. Stovall, 92 F.3d 219, 223 n.3 (4th Cir. 1996), cert, denied, 519 U.S. 1113 (1997).
The fact that the Boyles now assert claims against Zurich as assignees of C&N, and perhaps as assignees of Rago as well, also makes no difference. See Otis, 443 Mass, at 644-45. The Boyles argue that applying judicial estoppel here would be inconsistent with the common practice, approved many times in appellate decisions, of insureds assigning claims against their insurer to an injured party. But that contention is without merit. Since the Boyles are the real parties in interest, they may not take a position against Zurich in this case that is directly inconsistent with the positions that the Boyles took against C&N and Rago in the underlying tort suit. See Sandman, 78 Mass.App.Ct. at 801-03.
The Court concludes that the Boyles are judicially estopped from claiming that C&N or Rago could have avoided all liability to the Boyles but for Zurich’s alleged breach of its duly to defend. Such a position would be directly inconsistent with the positions that the Boyles successfully asserted in the prior action to obtain the substantial default judgment against Zurich’s insureds.
But the Court further concludes, in the exercise of its discretion, that it would be inappropriate to estop the Boyles from claiming that Zurich could have settled the underlying tort claims for much less money than was awarded in the default judgment. Cf. Otis, 443 Mass, at 642 (“judicial estoppel is an equitable doctrine, calling for the exercise of discretion in its application to particular facts”). There is no inconsistency between the Boyles’ position in the first case that C&N and Rago were negligent and liable to the Boyles for substantial damages, and taking the position in this case that they would have settled their underlying claims if Zurich had defended its insureds and made a good faith effort to settle the claims against them. See Sandman, 78 Mass.App.Ct. at 804 (reversing judicial estoppel order on this ground).
3. Zurich’s Liability for Post-Judgment Interest
The Court also reaffirms its prior holding that if the Boyles’ claims are covered by the insurance policy then Zurich has a contractual obligation to pay postjudgment interest in addition to its policy limits. When construed together, the duiy-to-defend and postjudgment interest provisions require Zurich to pay postjudgment interest on any claim covered by its policy, unless and until Zurich terminates its obligation to defend by settling the claim or by paying its policy limits in the manner specified in the policy.[1] The Supreme Judicial Court so held with respect to veiy similar policy language in Davis v. Allstate Ins. Co., 434 Mass. 174, 178 n.7 & 179-80 (2001). This does not mean, as Zurich incorrectly asserts, that “Zurich is liable for postjudgment interest in any case in which there is coverage for the claim.” The policy provides that Zurich’s “duty to pay interest ends when we have paid or deposited in court the part of the judgment that is without our Limit of Insurance.” Zurich could have “terminate[d] its express obligation to pay postjudgment interest” by paying out its policy limit in accord with this provision. Cf. Davis, 434 Mass, at *404 183-84 (where policy provided that insurer’s obligation to pay postjudgment interest would end once insurer “offered to pay” policy limits, insurer could terminate obligation to pay postjudgment interest by making unconditional offer to pay policy limits). But Zurich cannot evade its obligation to pay postjudgment interest by breaching its duty to defend and ignoring covered claims without offering to pay its policy limits until long after a default judgment far greater than the policy limit enters against its insureds, as it is alleged to have done in this case.
Zurich’s motion for reconsideration adds nothing of substance to its prior arguments on this point. The Court was already aware of and respectfully disagrees with the decision in Liquor Liab. Joint Underwriting Ass’n of Massachusetts v. Great Am. Ins. Co., SUCV1996-03127, 16 Mass. L. Rptr. 268, 2003 WL 21048793 (Mass. Super. 2003), which is inconsistent with and does not address Davis.
4. Request for a Report under Rule 64
Zurich also argues that its motion for reconsideration raises “discrete questions of law” that should be reported to the Appeals Court for its decision pursuant to Mass.R.Civ.P. 64 if the Court does not grant summary judgment in Zurich’s favor.
Zurich misconstrues Rule 64. A trial judge may report an interlocutory order for immediate appellate review, but “may not report a question of law” in the abstract. Barnes v. Metropolitan Housing Assistance Program, 425Mass. 79, 84 (1997); Collellav. Commonwealth, 417 Mass. 433, 434 (1994).
To the extent that Zurich was intending to ask the Court to report its prior order denying Zurich’s motion for summary judgment or this order on Zurich’s motion for reconsideration for interlocutory review, the Court declines to do so. Now that C&N has been reinstated and executed a new assignment to the Boyles, the validity of C&N’s assignment does not turn on any unsettled question of law that requires immediate resolution by an appellate court. Given the Court’s ruling that C&N’s assignment to the Boyles of C&N’s claims against Zurich is valid, the more difficult questions that Zurich raises about the validity and enforceability of Rago’s separate assignment of claims may end up having little effect on the ultimate merits of the Boyles’ claims. C&N and Rago are jointly and severally liable to the Boyles. If the Boyles are entitled to full compensation from Zurich under the assignment of rights by C&N, then it would not matter whether they had an independent right to obtain the same compensation under the separate assignment of rights by Rago. Legal issues that may turn out to be peripheral or immaterial do not justify interlocutory review under Rule 64. See Globe Newspaper Co. v. Massachusetts Bay Transp. Auth Retirement Bd., 412 Mass. 770, 772 (1992).
Similarly, since the Boyles’ claim for postjudgment interest is a relatively small part of their total monetary claim against Zurich, the legal question regarding Zurich’s contractual liability for postjudgment interest under the circumstances of this case is not so central to this matter that it warrants an interlocutory report and immediate appellate review. Indeed, if the Boyles could establish that Zurich breached its duty to defend C&N and its related duty to settle the Boyles’ claims once the liability of C&N became reasonably clear, then Zurich may be liable to the Boyles in an amount greater than the sum of the policy limits plus postjudgment interest, and may be liable as well for multiple damages and attorneys fees under G.L.c. 93A. If so, it would be immaterial whether Zurich has an independent obligation to pay postjudgment interest as part of its duty of indemnification.
Finally, the Court’s determination that the Boyles are not judicially estopped from asserting their claim that Zurich breached its duty to defend or settle the case does not warrant interlocutory review either, as it turns on well-settled law and an exercise of the Court’s discretion. See Globe Newspaper Co., 412 Mass, at 773.
ORDER
The Court ALLOWS the motion by Zurich American Insurance Company asking the Court to reconsider its prior denial of Zurich’s motion for summary judgment. Having carefully reconsidered its prior decision in light of Zurich’s new arguments and the undisputed facts showing that C&N has now assigned its claims against Zurich to the Plaintiffs in this action, the Court once again DENIES Zurich’s motion for summary judgment. Zurich’s request for an interlocutory report pursuant to Mass.R.Civ.P. 64(a) is also DENIED.
A final pre-trial conference shall take place on Tuesday, December 17,2013, at 2:00 p.m. Plaintiffs shall file a written status report no later than Friday, December 6,2013, regarding whether the trustee of Nicholas Rago’s bankruptcy estate has abandoned the estate’s claims against Zurich, and whether or not Plaintiffs still seek to assert any claims as assignees of Rago.

The relevant policy provisions state that:
We have the right to defend any lawsuit brought against anyone covered under this coverage for damages which might be payable under this coverage. We also have a duty to defend any lawsuit, even if it is without merit. Our duty to defend ends, however, when we tender, or pay to any claimant, or to a court of competent jurisdiction, with the court’s permission, the maximum limits provided under this coverage. We may end our duty to defend at any time during the course of the lawsuit by tendering or paying the maximum limits provided under this coverage, without the need for a judgment or settlement of the lawsuit or a release by the claimant.
[[Image here]]
In addition to the Limit of Insurance, we will pay for the insured: . . .
(6) AH interest on the full amount of any judgment that accrues after entry of the judgment in any “suit” against the “insured” we defend; but our duty to pay interest ends when we have paid or deposited in court the part of the judgment that is without our Limit of Insurance."