Salinger, Kenneth W., J.
This lawsuit arises from serious injuries suffered by Joseph Boyle when a tire on a truck being repaired by C&N Corporation exploded and severely lacerated his arm and hand. Boyle and his wife obtained a $2,648,715.80 default judgment. The Boyles then sued C&N’s insurer, the Zurich American Insurance Company, claiming that Zurich failed to settling their claims once C&N’s liability was reasonably clear and breached a contractual duty to pay postjudgment interest. After C&N assigned its rights against Zurich to the Boyles, they further claimed that Zurich breached its legal duties to C&N by not settling the Boyles’ claims. Zurich settled the Boyles’ direct claims against it by agreeing to pay $1,324,357 in postjudgment interest that had accrued on the default judgment. The claims assigned by C&N to the Boyles were tried in a bench trial.
The Court concludes that Zurich breached its contractual duty to defend C&N by failing to settle the Boyles’ claims against C&N within the $50,000 policy limit. Zurich is therefore liable to C&N for the excess portion of the judgment obtained by the Boyles above the policy limit, plus postjudgment interest to the extent that it has not already been paid by Zurich as part of the settlement of the Boyles’ own claims. Zurich’s duty to defend was triggered even though C&N breached its contractual obligation to notify Zurich of the lawsuit. Since C&N had previously put Zurich on notice of the accident, Zurich’s duty to defend was triggered when the Boyles notified Zurich that they had brought suit, C&N had been defaulted, and a damages assessment hearing had been scheduled. Zurich breached this duty by ignoring the lawsuit and negligently failing to settle the Boyles’ claims within the policy limits. The Court finds that if Zurich had told the Boyles that there was a $50,000 policy limit before the default judgment entered against C&N, the Boyles would have agreed to settle and release their claims against C&N in exchange for payment of $50,000 because they knew that C&N had no ongoing business or income and that its only asset was its insurance policy. Although C&N is and was essentially insolvent, under Massachusetts law Zurich cannot evade liability for its breach of contract on that ground. Nor does it matter that after the Boyles told Zurich about the damages assessment hearing they failed to file an affidavit confirming that fact, as required by G.L.c. 231, §58A.
The Court further concludes, however, that Zurich is not liable to C&N under G.L.c. 93A. Since C&N was *353 engaged in trade or commerce and bought insurance to cover its business activities, C&N’s claim that Zurich engaged in unfair or deceptive acts or practices arises under G.L.c. 93A, §11, and not under §9 of that statute. As a result, Zurich’s violation of its duly under G.L.c. 176D to settle the claims against C&N once its liability became reasonable clear does not automatically constitute a violation of c. 93A. Zurich’s inaction once it learned of the Boyles’ lawsuit was a negligent breach of its contractual duties, but did not rise to the level of an unfair or deceptive act or practice that violates c. 93A. Zurich’s refusal to pay more than the policy limit even after the Boyles obtained their large default judgment against C&N was based on a plausible interpretation of its insurance policy and thus did not violate c. 93A either: it was reasonable, even if ultimately incorrect, for Zurich to believe that its duty to defend had never been triggered because C&N failed to inform Zurich that the Boyles had brought suit.
1. Findings of Fact
The Court conducted a jury-waived trial in this case on May 19 and 21, 2014. The Court makes the following findings of fact based on the credible evidence presented at trial, the undisputed facts to which the parties stipulated before trial, and reasonable inferences drawn from the evidence.
i. Boyle’s Injury
Joseph Boyle was injured in C&N’s repair shop on March 8, 2006. At that time of the accident, C&N was a business engaged in trade or commerce in Massachusetts. On that day Nicholas Rago, who was then an employee and co-owner of C&N, had picked up a customer’s truck, affixed C&N’s repair plates to the truck, driven it to C&N’s garage, and put it up on the lift. The customer wanted C&N to diagnose a noise in the truck’s transmission. Rago and Boyle were friendly. Boyle had been employed as a motor vehicle mechanic for 28 years at the time he was injured. Rago knew that Boyle was an expert in repairing truck transmissions. So Rago asked Boyle to step into the garage and listen to the truck transmission while Rago revved the truck engine to the equivalent of driving at about 20-30 miles per hour. As he did so the truck’s rear wheels were spinning. One of the tires exploded, severely lacerating Boyle’s left forearm and hand.
Because of the injury Boyle underwent several surgeries, incurred medical bills of roughly $106,000. He suffered permanent scarring and partial loss of function in his left arm and hand. Boyle was unable to work for about a year, had to take less skilled and lower-paying jobs, and as a result lost earning capacity in the amount of $256,000. Due to Boyle’s injuries, his wife Janice suffered the loss of his services, society, affection, companionship, and consortium.
The Boyles’ injuries were covered by the Massachusetts Business Auto policy that Zurich issued to C&N. Since C&N had affixed its repair plate to the truck at the time that Boyle was injured, the truck was a “covered auto” under the Zurich policy. The personal injuries suffered by Mr. Boyle and the loss of consortium suffered by Mrs. Boyle were injuries covered by the Zurich policy, because they constituted or arose from bodily injury caused by a covered auto and occurred while the policy was in effect. The Zurich policy had a $50,000 coverage limit.
ii. Notice to Zurich
Zurich was put on notice of the Boyles’ claims on March 20, 2006, just twelve days after Boyle was injured. Rago had notified C&N’s insurance agent, Tarpey Insurance Group, of the accident and Boyles’ injuries. Tarpey then gave Zurich written notice of the Boyles’ claim. Zurich assigned a claim number and opened a claims file. Zurich’s claims file is kept only in electronic form. Any paper that needs to be added to the claims file is scanned in and added to the file electronically. The paper version is then destroyed. A Zurich investigator interviewed Rago on June 6, 2006. Rago described the accident. He also informed Zurich that Joseph Boyle had undergone two surgeries because of the accident and had at least one more surgeiy to come.
Zurich soon learned that the Boyles had retained Attorney Edward McNelley counsel, were planning to assert a bodily injury claim, and wanted to learn the policy limits in C&N’s insurance policy. But Zurich never responded to repeated inquiries by McNelley. On June 26, 2006, McNelley wrote to Rago and put C&N on notice that Joseph Boyle intended “to pursue a bodily injury claim.” Rago forwarded this letter to Tarpey, which sent McNelley’s letter on to Zurich on August 4, 2006. Zurich received this letter but never responded to or sought to contact McNelley. After hearing nothing from Zurich, McNelley obtained from Tarpey contact information for Zurich and the claim number that Zurich had assigned to the Boyles’ claim. On October 27, 2006, McNelley wrote directly to Zurich, informed it that Joseph Boyle planned to pursue a bodily injury claim, and asked Zurich to reveal C&N’s policy limits, as required by law.[1] Zurich received this letter, placed it in the Boyle claims file, but never responded to it. On December 5, 2006, McNelley wrote directly to Zurich a second time, marked the letter “2nd Request,” and again informed Zurich that Boyle intended to pursue a claim and again ask for the policy limits. Once again, Zurich received this letter and placed it in the claims file, but never responded to Attorney McNelley.
Attorney McNelley knew that C&N and Rago had no assets or meaningful income. The Court credits McNelley’s testimony that, given these circumstances, if Zurich had informed him that the coverage limit in C&N’s policy was $50,000 he would have advised the Boyles to settle the case — and, thus, release their claims — for that amount. But Zurich never made any attempt to contact McNelley. At some point McNelley *354 referred the Boyles’ claims to the law firm of Gillis & Bikofsky, P.C.
By October 2007, Zurich had concluded that C&N was liable for the Boyles’ injuries. By early 2008 Zurich had concluded that these claims were covered under the Business Auto policy that Zurich had issued to C&N. Zurich knew that its policy limit was $50,000. But C&N never conveyed these conclusions to Zurich, never completed its investigation of and never tried to determine the likely value of the Boyles’ claims, never warned C&N that it faced liability in excess of the $50,000 policy limit, and never made any attempt to settle the Boyles’ claims within the policy limit until long after a default judgment was entered against C&N.
The Court credits the testimony by Zurich’s manager of catastrophic claims in the Northeastern United States that if she had seen the post-surgeiy photos of Boyle’s arm and hand she would immediately have known that C&N’s exposure exceeded the $50,000 policy limit, tendered the policy limits, tried to resolve and obtain a release of the Boyles’ claims against C&N in exchange for the payment of the $50,000 policy limit, and if unsuccessful she would have told C&N that it had an exposure that exceeded the policy limits.
Zurich closed its claims file on the Boyles’ claims on February 29, 2008, without conducting a complete investigation of the Boyles’ claims. This was roughly one year before the end of the three-year limitations period on any claims by the Boyles against C&N. Zurich never sought or obtained Mr. Boyle’s medical records or pictures of his injuries, never contacted the Boyles’ attorney, never tried to speak with the Boyles, and never made any attempt to determine the monetary value or fair settlement value of the case. Zurich concedes that it should have completed its investigation of the Boyles’ claims within two years, and should have made a reasonable settlement offer after completing its investigation. But Zurich never completed its investigation nor made any settlement offer until well after a substantial default judgment had been entered against C&N.
iii. The Boyles’ Lawsuit
The Boyles filed a civil action against C&N and Rago on August 4, 2008. C&N was served with process and a copy of the Boyles’ complaint in hand on December 2, 2008. C&N never sent a copy of the summons and complaint to Zurich or Tarpey. Nor did C&N take any other steps to notify Zurich that the Boyles had filed suit. C&N was defaulted in January 2009 for failure to answer the complaint.[2]
Zurich did not learn that the Boyles had sued C&N until September 2009. At that point it was given actual notice of the lawsuit by the Boyles’ lawyer. On September 9, 2009, counsel for the Boyles sent a letter to Zurich informing it that an assessment of damages hearing had been scheduled in the Boyles’ lawsuit against C&N for September 21, 2009. If a Zurich claims representative had reviewed this letter, she or he would have known that C&N had been sued by the Boyles and had been defaulted. On September 22, 2009, the Boyles’ counsel sent a further letter informing Zurich that the damages assessment hearing had been rescheduled to October 7, 2009. The letter also told Zurich that Joseph Boyle’s medical expenses totaled $106,343.09, and enclosed copies of those bifis.
Zurich received both of these letters in September 2009, but did nothing with them other than have a clerk scan them and add them to Zurich’s claims file. Neither of these letters was forwarded to a supervisor or claims representative for review because the clerk did not realize that any response was required. As a result, Zurich did nothing at all in response to these September 2009 letters.
The Court credits the testimony of Zurich’s catastrophic claims supervisor that if these letters had been forwarded to her in September 2009 then she would have (1) contacted C&N to see whether it was aware of the lawsuit brought by the Boyles and whether C&N had ever tendered the defense of that suit to Zurich, (2) retained coverage counsel to determine whether there was any duly to defend C&N, and (3) offered to pay the Boyles the $50,000 policy limit, without waiting for the Boyles to make any settlement demand, because the claims file indicated that in October 2007 Zurich had determined that C&N’s liability was reasonably clear and Boyle’s medical expenses alone exceeded $100,000. The Court finds that any reasonable insurer would have taken these steps once it learned of the Boyles’ lawsuit in September 2009. However, Zurich did nothing at all in response to these September 2009 letters. Although Zurich had been put on notice that a hearing had been scheduled to assess damages against C&N, Zurich did not contact the Boyles’ attorney, obtain copies of the papers that had been filed with the court in connection with the Boyles’ lawsuit against C&N, make any attempt to have the default against C&N removed or to settle the Boyles’ claims against C&N, hire counsel for C&N or advise C&N to obtain its own counsel, or warn C&N that it faced a potential judgment well in excess of the policy limits.
The Court also credits the testimony by the Boyles that if Zurich had told them in September 2009 that its policy limit was $50,000, they would have accepted payment in this amount to settle their claims because they knew that C&N and Rago had no assets, were having business problems, and were unlikely to ever be able to pay the Boyles any amount not provided by Zurich. The Court finds this testimony to be credible. The Court also finds, as a reasonable inference from the Boyles’ testimony, that the Boyles would have been willing, as part of such a settlement, to release and waive their claims against C&N in September or October 2009 in exchange for a payment by Zurich of its *355 $50,000 policy limit.[3] The Court further finds that no reasonable insurer would have failed to settle the case within the policy limits in late 2009 before any default judgment was entered against C&N.
But Zurich made no attempt to settle the Boyles’ claims. As a result, a substantial excess judgment entered against C&N. The damages assessment hearing was held as scheduled on October 7, 2009. C&N did not appear. The court (MacLeod-Mancuso, J.) assessed damages of $1,500,000 in favor of Joseph Boyle and $750,000 in favor of Janice Boyle. Final judgment was entered against C&N and Rago, jointly and severally, on January 25, 2010, in the total amount of $2,648,715.80, consisting of the $2,250,000 in total damages, prejudgment interest from August 4, 2008 to January 25, 2010, and taxable costs. The Boyles have not recovered any part of this judgment from C&N or Rago.
In May 2011, some sixteen months after the default judgment, the Boyles’ attorney sent Zurich a demand letter under G.L.c. 93A, §9. The letter informed Zurich of the default judgment and demanded $6.75 million (treble the $2.25 million in actual damages awarded against C&N) plus attorneys fees and expenses.
Zurich promptly responded by offering to pay the $50,000 policy limit plus interest on that amount. Although Zurich did not expressly ask the Boyles to release their claims against Zurich in exchange for this proposed settlement amount, Zurich’s intent was to settle the claims and thus not to pay this amount without obtaining a release of claims in return. By telling the Boyles that it was prepared to settle their demand by paying $50,000 plus interest, Zurich was implicitly telling the Boyles that it would pay that amount in exchange for a release of their claims (Just as the Boyles’ testimony that they would have settled their claim for $50,000 if they had known before the default judgment entered implicitly meant that the Boyles would have released their claims under those circumstances). The Boyles rejected Zurich’s counteroffer because their lawyer counseled them that, now that the default judgment had entered against C&N, Zurich was liable to the Boyles for substantially more than $50,000.
In July 2011 the Boyles rejected that offer and upped their demand to add pre- and postjudgment interest. They demanded that Zurich pay roughly $9.3 million (based on their assertion that, including postjudgment interest, the default judgment had grown to $3.1 million) plus attorneys fees and expenses. Zurich promptly responded by again offering to pay the policy limits plus interest.
In April 2014, the Boyles sent Zurich a third demand letter regarding their direct claims against Zurich. They lowered their demand substantially, asking Zurich to pay roughly $3.975 million (three times the $1,324,357 in accrued postjudgment interest). Zurich promptly responded by offering to pay the $50,000 policy limit plus the $1,324,357 of postjudgment interest sought by the Boyles as single damages, or a total of $1,374,357. After further negotiations, the Boyles settled and released their direct claims against Zurich in exchange for a payment of $1,324,357.
iv. Assignment of C&N’s Rights
Meanwhile, in September 2013 C&N assigned to the Boyles all of its rights and claims against Zurich. Rago provided the Boyles with a substantively identical assignment on December 4, 2013.
C&N has not been a going concern for years. C&N was administratively dissolved by the Secretary of the Commonwealth on May 31, 2007, roughly fourteen months before the Boyles filed suit against C&N and Rago. C&N then “continue(d) its corporate existence,” but was only allowed to undertake activities “necessary in connection with winding up and liquidating its business and affairs.” G.L.c. 156D, §14.05. By the time that Zurich first learned of the Boyles’ lawsuit in September 2009, C&N was no longer in business, had no assets, income, or goodwill, and was effectively insolvent. C&N was reinstated or revived by the Secretary of the Commonwealth on September 6, 2013. By statute, “the reinstatement relates back to and takes effect as of the effective date of the administrative dissolution and the corporation resumes carrying on its business as if the administrative dissolution had never occurred!.]” G.L.c. 156D, §14.22(c). C&N arranged to be reinstated solely to ensure that it could assign its rights against Zurich to the Boyles. C&N did not ask the Secretary to reinstate the corporation without limitation. Instead, the application for reinstatement asked the Secretary to “limit reinstatement to a specified period of time not to exceed one year.” The sole remaining owner of C&N has no intention of operating C&N as an ongoing business, and has not run C&N as an ongoing business at any time since 2007.
On December 20, 2013, the Boyles, acting as assignees of C&N, sent Zurich a new demand letter under G.L.c. 93A. This letter demanded that Zurich pay treble the full amount of the default judgment plus interest, as well as attorneys fees and expenses, to resolve C&N’s claims for breach of contract and violation of c. 93A. The Boyles informed Zurich that the default judgment was at that point worth $3,893,612.23, including accrued postjudgment interest.
Zurich responded on January 10, 2014. Zurich took the position that it never had any duty to defend C&N because C&N had never informed Zurich of the Boyles’ lawsuit. Zurich nonetheless offered to settle C&N’s claims against it by paying the $50,000 policy limit plus interest.
2. Procedural Background
The Boyles commenced this action against Zurich on June 27, 2011. Zurich sought summary judgment *356 on the ground that its offer to pay the Boyles its $50,000 policy limit plus interest fully satisfied Zurich’s obligations and insulated it from any additional liability under the safe harbor provision in G.L.c. 93A, §9(3). The Court (Salinger, J.) denied Zurich’s motion in part on the grounds that: (1) the'Boyles are intended beneficiaries of Zurich’s contractual obligation to indemnify C&N, and Zurich was liable under its duly to indemnify to pay substantial postjudgment interest in addition to the $50,000 policy limit; and (2) in addition, the Boyles had obtained an assignment of C&N’s rights and claims against Zurich, and Zurich’s settlement offer did not attempt to resolve C&N’s separate claims against Zurich [31 Mass. L. Rptr. 139], In its ruling on Zurich’s motion for reconsideration [31 Mass. L. Rptr. 396], that Court also held that (a) the Boyles are not intended beneficiaries of Zurich’s contractual duly to defend C&N, and (b) in asserting the rights assigned by C&N, the Boyles were judicially estopped from arguing that C&N would have prevailed in the 2008 civil action or that a jury would have awarded substantially lower damages if only Zurich had defended the prior case, but were not judicially estopped from claiming that Zurich could have settled the Boyles’ claims for much less than the default judgment.
The parties ultimately agreed that the Boyles could assert in this action all claims that C&N had against Zurich and that it assigned to the Boyles in December 2013. In its memorandum and order on the Zurich’s motion for reconsideration of its motion for summary judgment, the Court (Salinger, J.) ruled that the amended complaint filed by the Boyles in this action encompassed the claims assigned to the Boyles by C&N, and that there was no need for the Boyles to allege the assignment in the complaint. Nonetheless, the Boyles sought leave to amend their complaint in this action to reference the assignment of rights by C&N. After the motion to amend was denied (by Leibensperger, J.), the Boyles filed a separate action in January 2014 (MICV2014-00303) against Zurich in their capacity as assignees of C&N. Zurich moved to dismiss that action under Mass.R.Civ.P. 12(b)(9) on the ground that the Boyles’ claims as assignees of C&N were already pending in this 2011 civil action. The Court (Salinger, J.) agreed with Zurich. As a result, both the Boyles’ own claims against Zurich and the claims they were asserting as assignees of C&N were to be tried together in this action.
A few days before trial, the Boyles settled their direct claims against Zurich. Zurich agreed to pay $1,324,357 in exchange for a release of those claims by the Boyles. Zurich did not concede that the Court was correct when it ruled that Zurich’s duty to indemnify C&N included a duty to pay postjudgment interest. But it agreed to settle all of the Boyles’ own claims against Zurich by paying an amount equal to the postjudgment interest. Thus, the trial in this case was limited to C&N’s claims against Zurich, which C&N had assigned to the Boyles.
3. Contractual Duty to Defend C&N a. Duty to Defend Triggered
The Court concludes that Zurich’s duty to defend C&N was triggered in September 2009 when it was put on notice that the Boyles had sued C&N. Since C&N had previously told Zurich about Mr. Boyle’s injuiy and likely claim, when Zurich learned of the lawsuit in 2009 it had every reason to believe that C&N would want Zurich to defend it. At that point Zurich had to either step in and provide a defense, or at least contact C&N and confirm whether C&N wanted Zurich to defend the suit. Zurich’s assertion that it had no duty to defend because C&N itself neither informed Zurich of the Boyles’ lawsuit nor asked C&N to provide a defense is incorrect, as explained below.
i. Lack of Prejudice
The factual premise of Zurich’s argument is correct: the Court finds that C&N breached its contractual obligation to “[immediately send [Zurich] copies of any . . . summons or legal paper received concerning [a] claim or ‘suit.’ ” The insurance policy states that Zurich will “have no duty to provide coverage under this policy unless there has been full and complete compliance with” this duty to “immediately send” a copy of any summons to Zurich. C&N never did notify Zurich that the Boyles had commenced a civil action against it, and never expressly asked Zurich to defend C&N against the Boyles’ lawsuit.
But C&N’s breach of its duty to inform Zurich of the Boyles’ lawsuit does not automatically mean that Zurich had no duty to defend C&N once it learned of the lawsuit from the Boyles’ attorney. Zurich cannot evade its duty to defend C&N unless Zurich proves that it suffered actual prejudice as a result of C&N’s failure to notify Zurich of the lawsuit. Under Massachusetts law, an insured’s failure to provide its insurer with notice of an accident or of a resulting lawsuit does not bar coverage unless the insurer proves that it was prejudiced as a result. See Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 282 (1980). Beginning with Johnson Controls, the Supreme Judicial Court has “reject[ed] . . . the strict contractual view of insurance policy interpretation, under which the failure of any policy provision, characterized as a condition precedent, automatically relieved an insurer of any obligation to pay on the policy.” Darcy v. Hartford Ins. Co., 407 Mass. 481, 485, 489 (1990). Instead, an insurer may disclaim coverage because of a breach by an insured of a notice requirement or other condition precedent in an insurance policy “only if the insurer could prove that any such breach actually prejudiced its position.” Id. at 490 (construing Johnson Controls). This rule of law applies to all insurance policies, not just those covered by G.L.c. 175, §112. See Goodman v. American Casualty Co., 419 Mass. 138, 140 (1994). Thus, the Court need not determine whether §112 applies here.
*357 The requirement that an insurer must show prejudice from the breach of a notice requirement applies with full force to a policy provision, like the one at issue here, requiring that an insured “shall immediately forward” to insurer any “summons or other process” it receives. See Sarnafil, Inc. v. Peerless Ins. Co., 418 Mass. 295, 298, 302-06 (1994).[4] Zurich therefore has the burden of “show[ing] that it had incurred actual prejudice” from C&N’s failure to forward a copy of the summons and complaint. Id. at 305. ‘To prove prejudice, generalities are insufficient. Instead, the insurer must identify ‘the precise manner in which its interests have suffered.’ ” Pilgrim Ins. Co. v. Molard, 73 Mass.App.Ct. 326, 337 (2008), quoting Darcy, 407 Mass. at 486-87.[5]
“[T|he violation of a policy provision should bar coverage only where the breach frustrates the purpose underlying that provision.” Sarnafil, 418 Mass. at 302, quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 123 (1991). The purpose of the policy requirement that C&N “immediately” inform Zurich of any lawsuit against it is to give Zurich “adequate ‘opportunity to protect its interests.’ ” Id. This includes the “opportunity to analyze specific claims against its insured in order that it fairly might deteimine whether it is obliged under its policy to provide a defense to its insured,” as well as the “opportunity, if it decides it is obliged to defend, not only to defend effectively but also to do so in the most cost effective way[.]” Id. at313 (O’Connor, J., dissenting).
The Court finds and concludes that Zurich has not met its burden of proving that it was prejudiced by C&N’s failure to immediately send a copy of the summons on to Zurich. By the time that C&N was first served with process by the Boyles in November 2008, Zurich had been aware of the accident for almost thirty-two months and had already concluded both that the Boyles’ claims were covered under insurance policy issued by Zurich and that C&N was liable for the Boyles’ injuries. So, Zurich already knew that it had a duty to defend C&N if and when a suit was filed against it by the Boyles, and already had been given ample time to investigate the Boyles’ claims. Zurich could easily have obtained a copy of the Boyles’ complaint, from the Boyles’ lawyer or from the Superior Court, to confirm that the allegations in the complaint stated claims covered by C&N’s insurance policy.
In addition, even though C&N had already been defaulted by September 2009, Zurich could still have provided C&N with an effective defense if it had taken steps to do so at that time. As explained above, the Court finds that if Zurich had paid any attention to the letters it received from the Boyles’ lawyer in September 2009 it would have quickly determined that C&N’s liability far exceeded Zurich’s $50,000 policy limit and tried to settle the lawsuit and obtain a release of all claims from the Boyles by offering the $50,000 policy limit. Furthermore, as also explained above, the Court finds that if Zurich had reached out to the Boyles prior to the October 7, 2009, damages hearing, informed the Boyles that the policy limit was $50,000, and offered to pay that amount if the Boyles would dismiss their claims against C&N with prejudice and release those claims, then both Mr. Boyle and Ms. Boyle would have accepted C&N’s offer and dropped their claims against C&N in exchange for the $50,000 policy limit. In sum, even though C&N breached its contractual obligation to put Zurich on notice that suit had been filed, Zurich was not prejudiced by that breach.
ii. Tender of Claim Plus Actual Knowledge of Lawsuit
Zurich’s argument that its duty to defend C&N was never triggered because C&N neither notified Zurich of the Boyles’ lawsuit nor asked Zurich to provide a defense, and that Zurich therefore need not show that it was prejudiced by the lack of such notice, is without merit. When C&N put Zurich on notice in March 2006 that Boyle had been injured in C&N’s garage, it was implicitly asking Zurich to handle the matter either by resolving Boyle’s claim without need for litigation or by defending any future lawsuit filed by Boyle. Thus, when Zurich learned in September 2009 that Boyle had in fact brought suit and C&N had been defaulted, Zurich had an obligation either to contact C&N and confirm whether its insured wanted Zurich to defend the lawsuit, or to step in and handle the defense by retaining defense counsel, seeking to have C&N’s default removed, and making a good faith effort to settle the Boyles’ claims. The combination of C&N’s 2006 notification to Zurich of Boyle’s claim and Zurich’s 2009 knowledge that the Boyles had sued C&N was sufficient to trigger Zurich’s duty to defend C&N.
Zurich’s argument that its duty to defend was never triggered because it did not receive notice of the lawsuit directly from C&N is inconsistent with the SJC’s holding in SarncfiL. In that case, the insured received a demand letter asserting a claim that may be covered by its insurance policy, and promptly gave the insurer notice of that claim. However, the insured did not immediately notify its insurer when it commenced an arbitration proceeding to adjudicate the claim. The insured did not tell the insurer about the arbitration proceeding until five months later. The SJC held that Samafil’s breach of its contractual obligation to give its insurer notice of a lawsuit or arbitration proceeding would not “justify Peerless’s failure to offer a defense to Samafil” after learning of the arbitration, unless the insurer could demonstrate “that it had incurred actual prejudice” from this delayed notice. See Samafil, 418 Mass, at 302, 305.
The holding in Samafil is consistent with the plain language of Zurich’s policy in this case. The “Massachusetts Mandatojy Endorsement” that is part of Zurich’s policy provides that Zurich has a duty to defend “any lawsuit brought against anyone covered under this coverage for damages which might be payable under this coverage.” This policy language suggests that, as in Samafil, the duty to defend was triggered once Zurich learned from the Boyles’ lawyer of their lawsuit against *358 C&N. Nothing in Zurich’s policy states that the duty to defend will not be triggered unless notice of a covered lawsuit is accompanied or followed by a request from C&N that Zurich provide a defense. In any case, the Court finds that when C&N first notified Zurich [1] of Mr. Boyle’s injury in March 2006 it was implicitly asking Zurich to handle the matter, including by providing a defense if litigation were ever commenced.
It is true that policy provisions outside of the Massachusetts Mandatory Endorsement state that (1) Zurich has “no duty to provide coverage under this policy unless there has been full compliance” by C&N of its duties, including its duty to inform Zurich of any lawsuit that may be covered by the policy, and (2) “[n]o one may bring a legal action against” Zurich under the policy “until. . . [t]here has been full compliance with all the terms of this Coverage Form.” But this does not mean that C&N’s non-compliance with its duly to “immediately send” a copy of the Boyles’ summons to Zurich bars the Boyles from asserting any claim on behalf of C&N. The Massachusetts Mandatory Endorsement trumps any contrary provision in the rest of the policy. It says so at the outset, where it states that “the provisions of the Coverage Form apply unless modified by the endorsement.” As noted above, the endorsement imposes a duty to defend that, under Massachusetts law, may in some circumstances be triggered even where the insured fails to notify the insurer that a civil action has been commenced. Under the plain language of the endorsement, no contrary provision in the rest of the policy can limit Zurich’s duty to defend, or C&N’s right to recover for breach of that duty, in a manner inconsistent with the language of the endorsement and the manner in which that language has been interpreted by the Supreme Judicial Court.
There is a split among other States as to whether mere knowledge that an insured has been sued can trigger an insurer’s duly to defend. In some States, actual notice from a third parly that a claim covered by an insurance policy has been brought against an insured is sufficient to trigger the insurer’s duly to defend the insured, even if the insured itself never puts the insurer on notice. See Garcia v. Underwriters at Lloyd’s London, 182 P.3d 113, 114 (N.M. 2008); Cincinnati Cos. v. West American Ins. Co., 701 N.E.2d 499, 503-05 (Ill. 1998). In a second group of States, the duty to defend is triggered once the insured itself notifies the insurer of a claim, even if the insured never expressly asks the insurer to provide a defense. See Home Ins. Co. v. National Union Fire Ins. of Pittsburgh, 658 N.W.2d 522, 531-34 (Minn. 2003); White Mountain Cable Const. Co. v. Transamerica Ins. Co., 631 A.2d 907, 910 (N.H. 1993); Towne Realty, Inc. v. Zurich Ins. Co., 548 N.W.2d 64, 67 (Wisc. 1996). In a few other states, the duty to defend is not triggered until the insured both notifies the insurer of the claim and expressly requests a defense. See National Union Fire Ins. Co. v. Crocker, 246 S.W.2d 603,608 (Texas 2008); Mutual of Enumclaw Ins. Co. v. USF Ins. Co., 191 P.3d 866, 873 (Wash. 2008) (en banc).
The rule adopted in Illinois and New Mexico is consistent with the SJC’s holding in Samqfll, while the rule advocated by Zurich and adopted in Texas and Washington is not. If Zurich had paid attention to the letters from the Boyles’ counsel in September 2009 informing Zurich of the pending lawsuit, and had any genuine doubt as to whether C&N’s prior notice of Boyle’s injury was intended to tender to Zurich the defense of any future lawsuit by the Boyles, then Zurich had an affirmation obligation to contact C&N and confirm whether it wanted Zurich to defend. Where, as here, an insured puts its insurer on notice of a potential claim, and thereafter the insurer receives actual notice from someone else that a lawsuit asserting that claim has been filed, the insurer’s duty to defend “may be discharged simply by contacting the insured to ascertain whether the insurer’s assistance is desired,” providing a defense if the insured “desires the insurer’s assistance,” and doing nothing further “(i]f the insured indicates that it does not want the insurer’s assistance, or is unresponsive or uncooperative.” Cincinnati Cos., 701 N.E.2d at 504 (Illinois); accord Towne Realty, 548 N.W.2d at 67 (Wisc.); White Mountain Cable Const., 631 A.2d at 910 (N.H.). If Zurich had contacted C&N in September 2009, asked whether C&N wanted Zurich to provide a defense, and received no response, Zurich may not have been required to do anything else. But Zurich was not entitled to ignore the Boyles’ lawsuit merely because it received notice of the litigation from the Boyles’ lawyer rather than from C&N. “The insurer will not be held to prophesy . . . but it will not be excused for indifference” with respect to its duly to defend its insured. Murach v. Massachusetts Bonding & Ins. Co., 339 Mass. 184, 187 (1959) (citation omitted).
Zurich has urged the Court to adopt statements in three prior Superior Court decisions to the effect that an insurer’s obligation to defend its insured is not triggered unless or until the insured or its agent notifies the insurer that a lawsuit has been commenced and thereby tenders defense of the suit to the insurer. The first of these three cases is Fanaras Enterprises, Inc. v. Doane, ESCV1987-02612, 1 Mass. L. Rptr. 145, 1993 WL 818902 (1993) (Rouse, J.), affd on other grounds, 423 Mass. 121 (1996). Since then, two other Superior Court judges have reiterated the Fanaras reasoning. See United States Fire Ins. v. Peerless Ins. Co., 18 Mass. L. Rptr. 64, MICV2000-5595, 2004 WL 1515591 (2004) (Brassard, J.) Flynn v. New England Ins. Co., Inc., 96-1193D, 1998 WL 150384 (1998) (Fabricant, J.).
Zurich’s reliance on these three decisions is misplaced. These rulings are not precedential and, in any case, are easily distinguishable. Flynn and Fanaras both involved “claims made” policies, and thus were applying legal rules that have no relevance here. See Flynn, 1998 WL 150384 at*l-*3, *9-* 10; Fanaras, 1993 WL 818902 at *2-*4. “In the case of a claims made policy, an insured’s failure to comply with notice and reporting provisions bars coverage, regardless of any prejudice to the insurer.” Flynn, 1998 WL 150384 at *9. As the Supreme Judicial *359 Court has explained, when an insured has purchased insurance that only covers claims made within a certain period, “the requirement that notice of the claim be given in the policy period or shortly thereafter in the claims-made policy period is of the essence in determining whether coverage exists. Prejudice [to the insurer as a result of] an untimely report in [such an] instance is not an appropriate inquiry.” Tenovsky, 424 Mass, at 681 (bracketed material in original), quoting Chas. T. Mam, 406 Mass, at 865. Since the policy that Zurich issued to C&N was not a claims-made policy, this case is governed by Samqpl, not Tenovsky, and C&N’s breach of its duty to notify Zurich of the Boyles’ lawsuit would only absolve Zurich of its duty to defend if Zurich could prove that it suffered actual prejudice as a result. Although United States Fire Insurance did not involve a claims-made policy, it is distinguishable on other grounds. The decision in that cased merely held that a claim that an insurer had breached its duty to defend because there was a disputed issue of material fact as to whether the insurer had ever received any notice of any kind of a potential claim against its insured. See United States Fire Ins., 2004 WL 1515591 at *11-N 3 Here, in contrast, it is undisputed that Zurich received actual notice of Mr. Boyle’s injury and his likely claim just a few weeks after the accident.
In any case, the Court is bound to follow Sarnafil. Under the circumstances of this case, where Zurich received actual notice of Mr. Boyle’s injuries from C&N shortly after the accident and Zurich suffered no actual prejudice as a result of C&N’s subsequent failure to inform Zurich that the Boyles had filed a lawsuit, Zurich’s duty to defend C&N was triggered in September 2009 when it learned from the Boyles’ counsel that C&N had been sued by the Boyles and then defaulted.
b. Liability for Not Defending C&N i. Breach of Duty to Settle
Zurich breached its duty to defend C&N by negligently failing to settle the Boyles’ claims within the policy limits. The Massachusetts Mandatory Endorsement that is part of the insurance policy provides that Zurich “has a duty to defend any lawsuit” asserting claims for damages that “might be payable under this coverage.” It further provides that Zurich has “the right to settle any claim or lawsuit as we see fit,” and that Zurich “may end [its] duty to defend at any time during the course of the lawsuit by tendering or paying the maximum limits provided under this coverage, without the need for a judgment or settlement of the lawsuit or a release by the claimant.”
An insurer is liable for breaching its contractual duty to defend if it commits “negligence in the handling of the settlement of a claim against its insured.” Hartford Casualty Ins. Co. v. New Hampshire Ins. Co., 417 Mass. 115, 120 (1994). When an insurance policy imposes a duty to defend on an insurer, while “leav[ing] the matter of settlement entirely to the insurer’s discretion,” the duty to defend also includes a duly to act in good faith to settle the claims against the insured. Murach, 339 Mass, at 186-87 accord Hartford Casualty, 417 Mass, at 118-20. “Good faith requires that any settlement decision be made without regard to the policy limits and that the insurer ‘exercise common prudence to discover the facts as to liability and damages upon which an intelligent decision may be based.’ ” Hartford Casualty, 417 Mass, at 119, quoting Murach, 339 Mass. at 187. The test for whether an insurer has breached its duty to settle a claim is “whether no reasonable insurer would have failed to settle the case within the policy limits.” Hartford Casualty at 121.
Zurich therefore had a duty “to settle the case within the . . . policy limits when it had the opportunity to do so.” Medical Malpractice Joint Underwriting Ass’n of Massachusetts v. Goldberg, 425 Mass. 46, 60 n.33 (1997). Since Zurich had already determined that C&N’s liability was reasonably clear, and it should have been obvious to Zurich that C&N’s exposure to the Boyles was far greater than the $50,000 policy limit, Zurich had a duty to by to settle the case for the policy limits even in the absence of a formal demand by the Boyles. An insurer’s “duty to make a prompt and fair settlement offer does not depend on the willingness of a claimant to accept such an offer,” but instead includes the duty to “put a fair and reasonable offer on the table when liability and damages become clear.” Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 566-67 (2001). Although Hopkins was enforcing the insurers’ statutory duty under G.L.c. 176D, §3(9) (f) “to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear,” the Court concludes that the same principles apply in enforcing Zurich’s contractual obligation to act in good faith and without negligence in attempting to settle the Boyles’ claims.
The Court concludes that Zurich breached its contractual obligations to C&N by failing to settle the Boyles’ claims within the $50,000 policy limit. By the time that Zurich learned of the Boyles’ lawsuit, it had already determined that C&N was liable for the accident that injured Mr. Boyle and that the resulting damages were covered by C&N’s policy. The medical records that the Boyles sent to Zurich in September 2009 established that Mr. Boyle’s medical expenses alone were more than twice the policy limit. No reasonable insurer would have failed to offer the $50,000 policy limit in an effort to settle the case. Indeed, Zurich’s own catastrophic claims representative conceded, and the Court finds, that if Zurich had paid attention to the letters from the Boyles’ counsel in September 2009 it would have immediately offered to pay the $50,000 policy limits to settle the case. As discussed above, the Court finds that the Boyles would have accepted such an offer because they knew that they would not be able to collect any judgment in excess of that amount either from C&N or from Rago. The Court therefore concludes that, in these circum *360 stances, no reasonable insurer would have failed to settle the Boyles’ claims within the policy limits.
The fact that Zurich’s policy gave it the right to end its duty to defend by tendering or paying the policy limits without settling the Boyles’ claims and obtaining a release on behalf of C&N is of no moment. That provision does not negate Zurich’s contractual obligation to attempt to settle the Boyles’ claims within the policy limits. It simply means that if Zurich had made a policy limit offer before the Boyles obtained a default judgment against C&N, and the Boyles had rejected that offer, then Zurich could have nonetheless paid the policy limit and put C&N on notice that Zurich had satisfied its duty to defend. But Zurich did no such thing. Instead, it continued to ignore the Boyles’ claim after it learned of their lawsuit, just as it had done during most of the three and a half years after Zurich first learned from C&N of Mr. Boyle’s injury. In so doing Zurich breached its duty to defend C&N and to settle the Boyles’ claims within the policy limit.
ii. C&N’s Insolvency
Zurich cannot avoid liability for its contractual breach on the ground that C&N was insolvent by September 2009 and as a result the Boyles will never be able to recover the judgment they obtained from any asset of C&N other than its rights against Zurich.
The fact that C&N is de facto insolvent is immaterial. “(I)nsolvency of the insured” does “not bar an action against the insurer for violating its duly to act in good faith to settle within the policy limits.” DiMarzo v. American Mut Ins. Co., 389 Mass 85, 95 n.9 (1983). “(I]t is not necessary for the insured to allege that he has paid or will pay a judgment in excess of the policy limits in an action against the insurer for breach of its duly to act in good faith.” Jenkins v. General Accident Fire & Life Assur. Corp., 349 Mass. 699, 702-03 (1965). Indeed, Zurich expressly agreed in its policy that “Bankruptcy or insolvency of the ‘insured’ or the ‘insured’s’ estate will not relieve us of any obligations under this Coverage Form.”
An insured may sue and obtain damages for breach of an insurer’s “duty to act in good faith in determining whether to settle” a case whether or not the insured can prove that it has the “ability to pay” the excess judgment. Jenldns, 349 Mass, at 702. The SJC has justified this rule in part on the ground that, “if solvency [were] required in order to sue for damages, an insurer is likely to be less responsive to its duty to act in good faith toward an insured who cannot pay the judgment.” Id. The Court must hold Zurich “liable for damages traceable to its unjustifiable failure to defend, ‘largely to prevent injury to the insured, but also to prevent the insurer from profiting from its own wrong. ’ ” Metropolitan Property and Casualty Ins. Co. v. Morrison, 460 Mass. 352, 359-60 (2011), quoting 14 G. Couch, Insurance §205:64, at 205-71 (3rd ed. 2005).
If C&N’s obligation to pay the Boyles directly had been legally terminated, that will still not relieve Zurich of liability for breaching its contractual duty. Cf. Campione v. Wilson, 422 Mass. 185, 188-94 (1996) (agreement for judgment in excess of policy limits coupled -with covenant not to execute does not invalidate an accompanying assignment of insured defendant’s right to sue insurer for negligence). For example, where an insurer breaches its duty to settle claims against an insured, and the insured’s personal liability to pay those claims is discharged in bankruptcy, states like Massachusetts that follow the “judgment rule” hold the insurer “liable for the full excess of the judgment over the policy limits.” Athridge v. Aetna Cas. & Sur. Co., 351 F.3d 1166, 1176 (D.C. Cir. 2003). Under the judgment rule insurers are not absolved from liability merely because the “insured is bankrupt, insolvent, or otherwise judgment proof.” Farmers Ins. Exchange v. Schropp, 567 P.2d 1359, 1368-69 (Kan. 1977); accord, e.g., Nunn v. Mid-Century Ins. Co., 244 P.3d 116, 121-23 (Colo. 2010); Carter v. Pioneer Mut. Case. Co., 423 N.E.2d 188, 190-92 (Ohio 1981). In contrast, in states that follow the “payment rule” an insurer’s liability is “commonly limited to the debtor’s net assets.” Id. A majority of states join Massachusetts in following the judgment rule and eschewing the payment rule. Gray v. Grain Dealers Mut. Ins. Co., 871 F.2d 1128, 1131 (D.C. Cir. 1989); accord A. Resnick & H. Sommer, 4 Collier on Bankruptcy ¶524.05, at 524-56 (17th ed. 2012) (“It is generally agreed that the debtor’s discharge does not affect the liability of the debtor’s insurer for damages caused by the debtor and that the creditor may seek to recover from the insurer”).
Since a bankruptcy discharge of an insured’s tort liability does not absolve an insurer from its contractual liability for failing to settle the claim giving rise to that same liability, there is no reason why the winding down of C&N’s affairs should absolve Zurich of its contractual liability for the excess judgment. Zurich’s argument on this point is contrary to Massachusetts law.
iii. G.L.c. 231, §58A
Nor can Zurich avoid its contractual liability on the ground that the default judgment against C&N is unenforceable because the Boyles failed to comply with the statute that governs the entry of default judgments in motor vehicle tort cases. That statute provides that “[d]amages shall not be assessed, except by special order of the court, in an action in which payment of the judgment is secured by a motor vehicle liability policy . . . and wherein the defendant has been defaulted for failure to enter an appearance, until the expiration of four days after the plaintiff has given notice of such default to the company issuing or executing such policy or bond, and has filed an affidavit thereof.” G.L.c. 231, §58A.
The Court finds that the Boyles complied with the substantive requirement imposed by §58A, by giving Zurich actual notice of the damage assessment hearing against C&N more than four days before the hearing took place. Although the Boyles never filed an affidavit confirming that fact, this technical violation does not mean that the judgment entered against C&N is void. The affidavit rule is a procedural requirement designed to simplify the task of determining whether *361 the insurer was given notice of the damage assessment hearing. Violation of the affidavit requirement did not prejudice C&N or Zurich in any way.
Since §58A does not expressly state that judgments obtained in violation of this affidavit rule are void, “and it is not necessary to hold the (judgment] void in order to accomplish the purpose of the statute, the inference is that the statutory provision was intended to be directory and not prohibitory” of a judgment obtained without filing the required affidavit. See City of Lawrence v. Falzarano, 380 Mass. 18, 21-23 (1980) (confirming arbitration award enforcing contract to renovate hospital, holding that contract was valid even though it was awarded in violation of statute requiring that no such renovation be commenced without certificate of need from department of public health); accord, e.g., LeClair v. Town of Norwell, 430 Mass. 328, 338 (1999) (applying same principle to technical violation of designer services contracting statute). The purpose of §58A is to ensure that motor vehicle insurers have the opportunity to step in and defend their insured before a default judgment is entered against them. It is undisputed Zurich had that opportunity here. Thus, the Boyles’ technical violation of §58A does not mean that the judgment obtained against C&N is void or unenforceable, and does not get Zurich off the hook.
The decision in Higbee v. Ambassador Taxi, Inc., 369 Mass. 967 (1976), is not to the contrary. In that case, the plaintiff could not recover against Ambassador Taxi’s insurer because it “failed to give the required statutory notice and to file an affidavit thereof’ in accord with §58A. Id. at 968. Here, in contrast, it is undisputed and the Court finds that the Boyles gave and Zurich received the required notice of the damages assessment hearing.
c. Calculation of Damages
The damages caused by Zurich’s breach of its duty to settle the Boyles’ claims is “the amount for which [C&N] became liable in excess of [its] policy coverage.” DiMarzo, 389 Mass, at 101-02. “When an insurer totally abandons its insured by breaching the duty to defend, ” the insurer may be held liable for “a judgment in excess of the policy” if the insured (or its assignee) can demonstrate “that the insurer’s breach . . . cost the insured an opportunity to settle below” or closer to “the policy limits.” National Union Fire Ins. Co. of Pittsburgh, Pa v. Continental Illinois Corp., 673 F.Sup. 267, 273 (N.D.Ill. 1987).
Zurich is therefore liable to C&N for the $2,598,715.80 excess judgment plus postjudgment interest. But the Boyles are only entitled to collect postjudgment interest once. Thus, the amount of postjudgment interest on the default judgment against C&N that Zurich agreed to pay to settle the Boyles’ direct claims against Zurich must be deducted from the postjudgment interest that Zurich is liable to pay on C&N’s claims against Zurich that have been assigned to the Boyles.
4. Liability Under G.L.c. 93A, §11
The Court finds that C&N purchased its insurance policy from Zurich in order to cover potential liability arising from C&N’s activities in trade or commerce, and that C&N’s liability to the Boyles did in fact arise from such business activities. C&N’s claim that Zurich has engaged in unfair or deceptive acts or practices is therefore a “business against business” claim that arises under G.L.c. 93A, §11. DiVenutL v. Reardon, 37 Mass.App.Ct. 73, 79 (1994); accord Spencer Press, Inc. v. Utica Mut Ins. Co., 42 Mass.App.Ct. 631, 636 (1997). C&N has no claim against Zurich under G.L.c. 93A, §9. Id.
Since the c. 93A claim asserted on behalf of C&N arises under §11, C&N’s assignees cannot prevail on the claim unless they prove that Zurich engaged in “unfair or deceptive acts or practices” in violation of G.L.c. 93A, §2. See Polaroid Corp. v. Travelers Indem. Co., 414 Mass. 747, 754 (1993). The Court finds that Zurich violated its statutory duty “to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.” G.L.c. 176D, §3(9) (f). It does not automatically follow, however, that Zurich is liable to C&N under G.L.c. 93A, §11. See Spencer Press, 42 Mass.App.Ct. at 636; DiVenuti, 37 Mass.App.Ct. at 79. Consumers who buy insurance coverage have broader rights under c. 93A than businesses that purchase insurance to cover their activities in trade or commerce. “A consumer asserting a claim under G.L.c. 93A, §9, may recover for violations of G.L.c. 176D, §3, cl. 9, without regard to whether the violation was unlawful under G.L.c. 93A, §2, because of the explicit statement to that effect in §9.” Id. In contrast, when a business claims that its insurer has handled claims against the business improperly, “§11 does not grant an independent right to recover for violations of G.L.c. 176D, §3, cl. 9.” Id.[6]
a. Negligent Failure to Settle in 2009
Zurich’s failure to respond to the Boyles’ attorney in September 2009 was not an unfair or deceptive act or practice within the meaning of G.L.c. 93A. Although the Court has concluded that Zurich’s failure to settle the Boyles’ claims within the policy limit prior to the entry of the default judgment was a negligent breach of Zurich’s contractual duties to C&N, such malfeasance does not rise to the level of a c. 93A violation.
Mere negligence does not violate c. 93A. Darviris v. Petros, 442 Mass. 274,278 (2004) (“a violation of G.L.c. 93A requires, at the veiy least, more than a finding of mere negligence”); O’Connor v. Merrimack Mut Fire Ins. Co., 73 Mass.App.Ct. 205,216 (2008) (“a negligent act standing by itself does not give rise to a claim under c. 93A”).
Similarly, “the mere breach of a contract, without more, does not amount to a c. 93A violation.” Madan v. Royal Indem. Co., 26 Mass.App.Ct. 756, 762 (1989); accord, e.g., Framingham Auto Sales, Inc. v. Workers’ Credit Union, 41 Mass.App.Ct. 416, 418 (1996) (“amere breach of a legal obligation under commercial law, with *362 out more, does not amount to an unfair or deceptive act under G.L.c. 93A”). A breach of contract would only violate c. 93A if “the nature, purpose, and effect of the challenged conduct is coercive or extortionate.” Diamond Crystal Brands, Inc. v. Backleaf, LLC, 60 Mass.App.Ct. 502, 507 (2004); accord, e.g., Zabin v. Picciotto, 73 Mass.App.Ct. 141, 169 (2008), rev. denied, 453 Mass. 1103, 1105 (2009). “In the absence of conduct having that quality, a failure to perform obligations under a [contract], even though deliberate and for reasons of self-interest, does not” violate c. 93A. Atkinson v. Rosenthal, 33 Mass.App.Ct. 219, 226 (1992); accord Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492, 505, rev. denied, 425 Mass. 1102 (1997) (landlord’s breach of non-competition clause did not violate c. 93A, as plaintiff presented no evidence that landlord violated lease “to gain an economic advantage” over tenant “or to extort a concession”).
Zurich breached its duties to C&N when it paid no attention to the letters it received from the Boyles’ counsel in September 2009 and made no attempt to settle their claims before a default judgment was entered against C&N. But that negligent breach of Zurich’s contractual duties was inadvertent, without intention, and was not unfair or deceptive within the meaning of c. 93A.
b. Settlement Offer in 2014
Nor did Zurich violate c. 93A by offering to pay only $50,000 plus interest to settle C&N’s assigned claims. The Court finds that Zurich did not make this offer in bad faith or based on any ulterior motives. Instead, Zurich did so based on its reading of its insurance policy. It was neither unfair nor deceptive for Zurich to take the position that its duty to defend C&N had never been triggered because C&N failed to tell Zurich that it had been sued by the Boyles, as expressly required by the policy.
Zurich’s position that it had no duly to defend C&N, because C&N breached its obligation to notify Zurich about the Boyles’ lawsuit, was based on a plausible interpretation of its insurance policy. As discussed above, the highest courts of several states have held that an insurer has no duty to defend unless and until its insured asks for a defense. Furthermore, as Zurich correctly points out, at least three Massachusetts Superior Court judges have written decisions that can be read as accepting this rule of law at least in some circumstances. The fact that the Court has disagreed with Zurich on this point, and held that under the circumstances of this case Zurich’s duty to defend was triggered in September 2009 when it received actual notice of the Boyles’ lawsuit, does not demonstrate that Zurich’s contrary position was implausible. Although this Court has concluded that Zurich’s position is inconsistent with the SJC’s holding in Samapl the Court also concludes that a reasonable insurer could have believed that Samapl did not clearly establish whether the duty to defend was triggered under the circumstances of this case.
Since Zurich based its settlement offer “upon a plausible, although ultimately incorrect, interpretation of its policy,” that offer did not violate G.L.c. 93A. See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 15 (1989); accord Phoenix Ins. Co. v. Churchwell 57 Mass.App.Ct. 612, 616-17 (2003) (affirming grant of summary judgment on this ground); White v. American Cos. Ins. Co., 53 Mass.App.Ct. 66, 73-74 (2001) (same). “An insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy cannot ordinarily be said to have committed a violation of G.L.c. 93A.” Lumbermen’s Mut. Cas. Co. v. Offices Unlimited, Inc., 419 Mass. 462, 468 (1995) (dictum).
ORDER
Final judgment shall enter in Plaintiffs’ favor on the claims asserted by Joseph P. and Janice M. Boyle as assignees of C&N Corporation in the amount of $2,598,715.80, plus postjudgment interest running from January 25, 2010, minus the $1,324,357 in postjudgment interest that defendant Zurich American Insurance Company has already agreed to pay to the Boyles in order to settle their direct claims against Zurich, plus taxable costs.

By statute, “Any insurer doing business in the commonwealth shall reveal to an injured party making claim against an insured, the amount of the limits of said insured’s liability coverage, upon receiving a request in writing for such information from the inj ured party or his attorney. A reply shall be made within thirty days of receiving such request. Any insurer who fails to comply with the provisions of this section shall be liable to pay to the claimant the sum of five hundred dollars plus reasonable attorneys fees and expenses incurred in obtaining the coverage information provided for herein.” G.L.c. 175, §112C.

The Court has taken judicial notice of the docket in Boyle v. C&N Corporation, MICV2008-02932. Records “of other courts in related proceedings” are subject to judicial notice. See Reliance Ins. Co. v. City of Boston, 71 Mass.App.Ct. 550, 555 (2008).

When an insurance policy refers to an insurer’s right or duty “to settle” claims against its insured, “the term ‘settle’ implies an offer of payment to the claimant that is expressly conditioned on some type of release for the insured.” Davis v. Allstate Ins. Co., 434 Mass. 174, 186 (2001). Similarly, the Boyles’ uncontested testimony that they would have settled their claims in exchange for payment of the policy limit implies that they would have accepted such payment conditioned on releasing their claims against C&N.

The Supreme Judicial Court’s holdings to the contrary in Depot Café v. Century Indem. Co., 321 Mass. 220, 224-25 (1947), and Potter v. Great American Indemnity Co., 316 Mass. 155, 157 (1944), have been overruled, albeit not expressly, by Samcfil, Darby, and Johnson Controls.

Different considerations apply to claims-made policies that only cover claims made by an insured within a particular time period. See Tenovsky v. Alliance Syndicate, Inc., 424 Mass. 678, 681 (1997); Chas. T. Main, Inc. v. Fireman's Fund Ins. Co., 406 Mass. 862, 864 (1990). The policy issued by Zurich to C&N was not a claims-made policy.

Plaintiffs reliance on R.W. Granger & Sons, Inc. v. J&S Insulation, Inc., 435 Mass. 66, 75-78 (2001), is misplaced. In that case the insurer had waived its argument that violations of G.L.c. 176D, §3(9), do not automatically support a finding of a violation of G.L.c. 93A, §11, because “the point was not raised before the trial judge prior to the entry of judgment.” Id. at 74.